## THE STATE v. WILLIAM B. SLOAN, Appellant.

Division Two, July 14, 1925.

1. **INDICTMENT: Returned by Prosecuting Attorney: Secrecy.** Not-
withstanding a record recital that on November 15th and during
the November term the prosecuting attorney filed indictment No.
C-1366, the indictment was returned into court in compliance with
the statute (Sec. 3884, R. S. 1919) which requires that indictments
found by the grand jury shall be presented by the foreman in open
court in the presence of the grand jurors, and with Section 3892
providing that, when a person indicted is not held in confinement
or under recognizance, the indictment shall not be docketed or
entered upon the minutes or records until the defendant shall have
been arrested, where the record entry made at the preceding Sep-
tember term is: ''Now at this day comes the grand jury, in a body,
into open court and presents to this court the following indict-
ment, to-wit: C-1366, State of Missouri vs. ————.'' The in-
dictments mentioned in the two record entries bear the same
number, and the practice of giving the indictment a number and
leaving the name of defendant blank in the record sufficiently

State v. Sloan.

identified the indictment under the provisions of said Section 3884, without violating the provisions for secrecy of said Section 3892.

2. **CONTINUANCE: Agreement with Prosecuting Attorney.** The granting or refusal of a continuance on the ground of absent witnesses rests largely in the discretion of the trial judge, and his action in respect thereto is not ground for reversal unless it is apparent that injustice has been done the defendant; and where the continuance was asked on the ground that defendant's attorney had an agreement with the prosecuting attorney's office that the case would not be tried during the week it was tried, and that in consequence certain material witnesses for defendant were absent, but the evidence shows that there was no such agreement, but only an assurance from the stenographer in the prosecuting attorney's office that the case would not be tried during the week, and the defendant had already had one continuance and permitted his witnesses to go away without permission of the court, and their testimony if present would only be cumulative, since numerous other witnesses testified to things he wished to prove by them, no reversible error was committed in denying his application for a continuance.

3. **EVIDENCE: Tax Receipt.** The payment of taxes is an act of dominion over property, and where defendant is being tried for perjury, in that when he was qualifying as surety on the appeal bond of a convicted felon, he falsely testified that he was the sole and absolute owner of certain real estate, it is not reversible error to admit in evidence a triplicate original carbon of a tax receipt describing said real estate, wherein defendant's wife is named as the owner, and which is marked paid on the very day defendant testified that he was the sole owner of said property, even though the wife is not a party to the suit.

4. ———: **Error Invited by Defendant: Personal Tax Receipt.** Where defendant is being tried for perjury upon a charge that, in qualifying as a bail bondsman, he falsely testified that he was the sole and absolute owner of certain real estate, a tax receipt showing that he paid taxes on a small amount of personal property on the very day he so testified is not competent, nor is proof of his ownership of other property; but where the court permitted him to testify to his ownership of several thousand dollars' worth of personal property, and he thereby opened the door to the incompetent evidence himself, the admission in rebuttal of a tax receipt showing his personal property was valued at $150, is not reversible error, nor an error of which he can complain.

5. ———: **Refusal to Admit: No Proffer.** Complaint that the court refused to admit certain testimony offered by appellant cannot be considered on appeal, where the record shows no offer of proof was

made and the nature of the testimony expected does not appear from the questions asked.

6. **INSTRUCTIONS: Converse of State's.** Where the main instructions given concluded with the words, "and unless you so find the facts to be, you will acquit the defendant," the refusal of defendant's requested converse instructions is not reversible error.

7. ———: **Ownership of Lands: Delivery of Deed Necessary.** Where defendant is being tried for perjury upon a charge that he had falsely testified, when qualifying as a bail bondsman, that he was the sole and absolute owner of certain real estate, and he has testified that his wife had previously executed and acknowledged before a notary public a deed conveying said lands to him, an instruction requiring the jury to find only that the deed was "made and executed" before a notary public by his wife, but not that it was delivered to him, is not correct. But if only the word "made" had been used, some basis would appear for the contention that said word was equivalent, in a popular sense at least, to the words "made, executed and delivered."

8. ———: **Perjury: Confession: Corroboration.** The presumption of innocence of the crime of perjury is not overcome by statements of the accused that his previous testimony was intentionally false, and such admissions are not of themselves sufficient corroboration of the testimony of a single witness as to such falsity; but where the alleged confession is only an explanation, consistent with defendant's innocence, and amounts only to a statement that he was honestly mistaken when he testified that he was the sole and absolute owner of certain real estate, an instruction on the quantum of evidence required to convict is not erroneous because it does not tell the jury that the confession of defendant should not be considered in corroboration, and the reason is that such statement of an honest and unintentional mistake did not tend to corroborate the intentional falsity of his testimony. [Distinguishing State v. Hunter, 181 Mo. 316, and State v. Thornton, 245 Mo. 437.]

9. ———: ———: **Broadening the Issues: Incumbrance.** Where the indictment for perjury charged that defendant had falsely testified that he was the sole and undisputed owner in fee simple of certain real estate and that said real estate was free and clear of all incumbrances, an instruction telling the jury that if defendant testified that he was the sole and undisputed owner in fee of said property and that it was free from all incumbrances, then such matters were material to the case, does not broaden the issues. The court is authorized to declare as a matter of law that an incumbrance upon real estate is material to the issue in such case.

State v. Sloan.

10. ———: ———: **Incompetent Evidence: Ownership of Other Property: Intent.** Where the perjury charge is that defendant, in qualifying as surety on an appeal bond, falsely testified that he was the sole and undisputed owner of certain specified real estate, testimony offered by him on the theory that he was otherwise financially responsible upon the bond without taking into consideration said real estate, even if true, is no defense, and is not admissible for any purpose, but if admitted he cannot complain that the court gave an instruction telling the jury that the evidence relating "to other transactions is submitted to your consideration for the sole purpose of shedding light upon the intent and motive of the defendant in the transaction set out in the indictment."

11. ———: ———: **Credibility: False Testimony in Material Matter.** Where defendant is being tried on a charge of perjury, in that, in qualifying as a surety on an appeal bond, he falsely testified that he was the sole and undisputed owner of certain specified real estate, his testimony at the trial that his wife some years previously had made, executed, acknowledged and delivered a deed conveying the property to him, that he had delivered it to some mysterious notary to be recorded and that he could not recall the name of the notary, together with his contradictory statement to witnesses that he had forgotten that the property was in his wife's name, when in fact the taxes on said property were paid on the very day he so qualified and the tax receipt was issued in his wife's name, is amply sufficient to authorize an instruction that if any witness has wilfully testified falsely as to any material fact the jury may reject or treat as untrue the whole or any part of such witness's testimony.

12. **QUESTIONS: Objections Sustained.** Where objections by defendant to questions asked by the State were sustained, the propriety of such questions is not for consideration on his appeal.

13. ———: **Perjury: Fire under Defendant.** Where defendant is being tried for perjury upon a charge that, in qualifying as surety upon an appeal bond, he falsely testified that he was the sole and absolute owner of certain specified real estate, and he has testified that he visited the circuit judge and explained to him that he had made a mistake in his testimony, it is not error to ask him on cross-examination if that was not about eight days afterwards, when he began to see a little fire burning under him, the purpose of the question being to elicit from him his knowledge that at the time of the visit the prosecuting attorney was building a fire under him by preparing a charge of perjury and that he was actuated by fear rather than by an honest desire to correct his testimony.

State v. Sloan.

14. **ARGUMENT TO JURY: Objection Sustained: No Request for Reprimand.** Where the court sustained defendant's objection to the argument to the jury, and the jury were told to disregard it, and no request for a reprimand of counsel was made, the propriety of the argument is not for consideration.

15. ———: **Perjury: Necessity of Appeal Bond.** Where the charge is that defendant, in qualifying as surety on the appeal bond of a convicted felon, falsely testified that he was the sole and undisputed owner of certain real estate, there can be no valid objection to the argument of the prosecuting attorney to the jury to the effect that it was necessary to secure an appeal bond in the case appealed which would produce said felon after his appeal in the Supreme Court had been disposed of.

16. ———: **No Objection.** If no objection was made to certain argument to the jury, its propriety is not for consideration on appeal.

17. ———: **Failure to Call Defendant's Wife as Witness.** Where defendant's counsel in his argument to the jury referred to the fact that the State did not call the defendant's wife as a witness, defendant cannot complain that the counsel for the State replied in his closing argument that the State was not to blame for not calling her, since the defendant invited the error. And that defendant's counsel in his argument had thus opened the door, is shown by the fact that the only objection was that "there is no such evidence" (which is no objection at all) and by the further fact that the court overruled the objection, which indicates that the court knew that defendant's counsel in his argument had criticised and blamed the State's attorney for not calling defendant's wife as a witness.

18. **PERJURY: Qualifying Surety on Appeal Bond.** For a surety on an appeal bond to falsely testify as to his ownership of certain described property, whereby a convicted person obtains his liberty while his appeal is pending, is perjury, and a conviction upon clear and satisfactory evidence, without error in the trial, will be affirmed.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 821, p. 451, n. 91; Section 870, p. 481, n. 84, 85; Section 891, p. 488, n. 5; Section 2184, p. 867, n. 21; Section 2185, p. 867, n. 25; Section 2240, p. 896, n. 85; Section 2261, p. 911, n. 74; Section 2270, p. 916, n. 55; Section 2418, p. 1002, n. 17, 19; Section 2442, p. 1017, n. 8; Section 2506, p. 1063. n. 85; 17 C. J., Section 3332, p. 62, n. 94; Section 3464, p. 172, n. 44, 45; Section 3556, p. 211, n. 96. Indictments and Informations, 31 C. J., Section 54, p. 587, n. 5, p. 590, n. 48; Section 59, p. 592, n. 93. Make, 38 C. J., Section 4, p. 342, n. 56. Perjury, 30 Cyc. p. 1456, n. 17; p. 1457, n. 22. Trial, 38 Cyc. p. 1329, n. 68. Witnesses, 40 Cyc. p. 2510, n. 29.

Appeal from Jackson Circuit Court.—*Hon Samuel A. Dew*, Judge.

AFFIRMED.

*W. Rea Heath* for appellant.

(1) The indictment was not properly returned into court by the grand jury. Sec. 3884, R. S. 1919. (2) The court erred in not confining the evidence to the issues set out in the indictment. State v. Holden, 48 Mo. 93; State v. Nelson, 146 Mo. 256. (3) The court erred in refusing defendant a continuance. State v. Sherrell, 198 S. W. 464; State v. Anderson, 96 Mo. 241; State v. Hesterly, 182 Mo. 16; State v. Arnold, 267 Mo. 33. (4) The court erred in admitting evidence of taxes and tax records and the certificate of the stenographer. State v. Fannon, 158 Mo. 149; State v. Edelen, 231 S. W. 585; State v. Martin, 229 Mo. 620; State v. Austin, 234 S. W. 802. (5) The court erred in refusing the evidence of the defendant, as to income as received from sale of property and of money paid on this and other property in his name. (6) Instruction 1 given for the State was error. State v. Smith, 119 Mo. 439; State v. Kyle, 177 Mo. 659; State v. Nelson, 146 Mo. 256; State v. Slusher, 256 S. W. 817; State v. Tate, 12 Mo. App. 327; Appleman v. Appleman, 140 Mo. 309; State v. Hardiman, 209 S. W. 879; State v. Thornton, 245 Mo. 437. (7) The court erred in refusing defendant's instructions covering the defense offered. State v. Palmer, 88 Mo. 568; State v. Love, 93 Mo. 547; State v. Graham, 96 Mo. 120; State v. Brown, 104 Mo. 365; State v. Taylor, 118 Mo. 153; State v. Jackson, 126 Mo. 521; State v. May, 142 Mo. 135; State v. Stile, 149 Mo. App. 104; State v. Rutherford, 152 Mo. 124; State v. Darrah, 152 Mo. 522; State v. Faulkner, 175 Mo. 546; State v. Harris, 232 Mo. 317; State v. Brown, 239 Mo. 431; State v. Conway, 241 Mo. 271; State v. Finkelstein, 269 Mo. 612; State v. Levitt, 278 Mo. 372. (8) The conduct of the prosecuting attorney was prejudicial. State v. Mix, 15 Mo. 153; State v. Conway, 241 Mo. 271; State v. Dixon, 253 S. W. 746. (9) The court erred in giving Instruction 3. (10) The court erred in giving Instruc-

tion 6. State v. Palmer, 88 Mo. 568. (11) The court erred in refusing proper and material evidence offered by the defendant.

*Robert W. Otto,* Attorney-General, and *James A. Potter,* Special Assistant Attorney-General, for respondent.

(1) The mistake in the caption of the indictment wherein the words ''September Term, 1923,'' are used, whereas in truth the indictment was returned in the November term, is of no consequence, since the caption is no part of the indictment, and any error in the caption is not fatal to the indictment. Sec. 3908, R. S. 1919; Kirk v. State, 6 Mo. 469; State v. Daniels, 66 Mo. 192; State v. Blakely, 83 Mo. 359. (2) The court committed no error in permitting evidence to be introduced to show there was an incumbrance on the property described by the appellant and such evidence did not broaden the issues in the case. The indictment charges that it was material to inquire into the ownership of the property. An inquiry into the ownership of the property necessarily involved an inquiry into the question of incumbrances on the property. The indictment specifically charges that appellant falsely stated that there was no incumbrance on the property, hence the evidence relating thereto did not broaden the issues made by the indictment. (3) The court did not err in refusing the defendant a continuance. An application for continuance is addressed to the sound discretion of the court, and unless such discretion has been abused the appellate court will not interfere. State v. Cain, 247 Mo. 705; State v. Salts, 263 Mo. 314; State v. Burgess, 192 S. W. 823; State v. Wilson, 242 S. W. 887. The evidence sought to be proven by the absent witness was merely cumulative and for that reason any error committed in the ruling on the application for continuance is not reversible error. State v. Riddle, 179 Mo. 294; State v. Sassaman, 214 Mo. 734. (4) The court committed no error in admitting the tax receipt in evidence or in admitting testimony of the stenographer. The tax receipts offered in evidence were duplicate originals and

not copies as stated by appellant.  The evidence of the
stenographer was the original testimony of the appel-
lant and was not a copy of such testimony.   (5)   The
court committed no error in refusing the evidence offered
by the appellant to the effect that he had received money
from the sales of deeds of trust subsequent to the time
of his tax return in 1922.   (6)   Instruction 1 given for
the State was not erroneous.  Certain cases cited by ap-
pellant under this proposition relate to the failure of the
court to instruct the jury that they should not consider
the admission of the appellant in determining the *quantum*
of proof necessary in a perjury case.  The case of the
State v. Thornton, 245 Mo. 437, cited by appellant, re-
lates to involuntary statements made by a defendant be-
fore a grand jury.  In such a case such involuntary
statements are clearly inadmissible for any purpose, and
if erroneously admitted at all the jury should, of course,
be instructed not to consider them in determining the
*quantum* of proof necessary in a perjury case.  In the
case at bar the alleged admissions of the appellant were
purely voluntary.  The admissions of the appellant did
not constitute any part of the *corpus delicti*.  The *corpus
delicti* was proven beyond all shadow of doubt by nu-
merous witnesses and by indisputable record evidence.
The falsity of the appellant's testimony was admitted.
The sole question at issue was whether such false tes-
timony was given wilfully, that is, intentionally.  Con-
tradictory statements made by a defendant are admissible
in connection with other circumstances against the ac-
cused.  The only limitation is that the jury should not
consider them in determining the corroborative proof of
the *corpus delicti,* and since this evidence was not of-
fered in proof of the *corpus delicti* it was not necessary
to instruct the jury not to consider it in that connection.
State v. Hunter, 181 Mo. 337.   (7)   The court com-
mitted no error in refusing the instructions offered by
the defendant for two reasons: First, because such in-
structions were clearly erroneous; and second, because
the point involved in such instructions was covered by
Instruction 1 given for the State.  State v. Dougherty,

228 S. W. 786. (8) The argument of counsel for the State was not prejudicial under the evidence in the case, and even if any of such argument may be considered improper the case should not be reversed on that account unless from a consideration of all the evidence it is believed that a verdict of guilty would not likely have been rendered except for such improper argument. State v. Hess, 240 Mo. 160; State v. Baker, 246 Mo. 376. The court did not err in giving Instruction 2 for the State. The whole issue in the case is the question of the intent and motive of the appellant in the giving of his false testimony. In other words, this instruction was given to protect the appellant. (9) The court committed no error in giving Instruction 6 for the State. This instruction is the usual and ordinary stereotyped instruction given in criminal cases.

BLAIR, J.—Defendant was convicted in the Circuit Court of Jackson County of the felony of perjury, was sentenced to imprisonment in the penitentiary for two years, and has appealed.

Defendant offered himself as surety upon a $12,000 appeal bond for one Bert R. Meyers, who had been convicted of a felony in said county and had appealed to this court. He was sworn and testified in such proceeding as to his property qualifications. It was during the course of such testimony that the alleged false testimony was given.

The evidence offered by the State tended to show that the defendant then and there falsely testified that he was the sole and absolute owner in fee simple of certain real estate in Kansas City, that said property was not in his wife's name, and that it was free from encumbrances. The proof showed that the record title to said real estate was in defendant's wife, and that said property was encumbered to secure the payment of a note or notes, amounting to $3,000. The property was taken in the name of defendant's wife when first purchased, and defendant had joined with his wife in the execution of the encumbrance.

Defendant did not deny that the record title stood in his wife's name or that said property was so encumbered. He claimed that he had forgotten that said encumbrance was upon this particular property and thought it was upon a different piece of property, which he claimed to own. He testified that, about the year 1911, his wife conveyed said property to him by deed executed before some notary public. He could not give the name or address of such notary. He said that he delivered the deed to said notary to have it recorded. One witness corroborated him as to the execution of said deed.

Defendant offered testimony tending to show that the tenants occupying said property paid the rent to him and that he exercised all of the usual acts of ownership and dominion over same. He also offered testimony tending to show that he bore a good reputation for truth and honesty.

The State offered evidence tending to show that said property was assessed in the name of defendant's wife and that the tax receipts were issued in her name.

I. The first assignment of error is that the indictment was not returned into court in compliance with Section 3884, Revised Statutes 1919. That section requires that indictments found by the grand jury shall be presented by the foreman in open court in the presence of the grand jurors. Defendant's contention is Indictment: bottomed upon a record recital that, on November Return: ber 15, 1923, and during the November term of Secrecy. court, the prosecuting attorney filed indictment No. C-1366, State of Missouri v. W. B. Sloan. The clerk of the Circuit Court of Jackson County has filed with this court a certified copy of a record entry made at the September, 1923, term of said court, as follows: "Now at this day, comes the Grand Jury, in a body, into open court and presents to this court the following indictments to-wit: C-1366, State of Missouri vs. ———."

It will be noted that the indictments mentioned in the two record entries bear the same number. The defendant may not have been in actual custody, when the

indictment was presented to the court at the September term, although it appears that an information had previously been filed against him. The court did not permit its records, which are always open to the inspection of the public, to disclose the name of the defendant named in the indictment, until he had been brought into court to answer the same. Section 3892, Revised Statutes 1919, provides that, when a person indicted is not held in confinement or under recognizance, the indictment shall not be docketed or entered upon the minutes or records of the court until the defendant shall have been arrested. The practice of giving the indictment a number and leaving the name of the defendant blank in the record, sufficiently identified the indictment as having been filed under the provisions of Section 3884, without violating the provisions of Section 3892 as to secrecy.

The assignment is overruled.

II. Error is assigned because the trial court refused defendant's application for continuance. It appears that, on January 9, 1924, and before the jurors were examined concerning their qualifications as jurors, counsel for defendant dictated into the record a motion for continuance of the case because of the absence of two material witnesses, to-wit, Frank Ayres and —— Slatner. It was stated that counsel had excused his witnesses until Monday, January 14th, upon a statement of the prosecuting attorney's office that the case would not be tried during that week (week when the case was actually tried) and that defendant need not get ready for trial during that week. It was then stated that said Slatner was a railroad man who was out of the city at the time and would not return until January 11th and that defendant was unable to get word to him and could not produce him as a witness; that said Slatner would testify that he was present at a time twelve or fourteen years previously when defendant's wife executed a deed conveying the property in question to the defendant and saw said deed signed,

*Continuance.*

acknowledged and delivered to defendant; that said Slatner would also testify to long continued acts of ownership and dominion over said property by defendant.

The testimony of said witness Ayres was stated to be in reference to acts of dominion over said property by defendant during many years and that defendant bore a good reputation for truth and honesty. It was not stated that said Ayres could not be produced to testify. His testimony was merely cumulative, as there was abundance of evidence on both propositions from other witnesses.

After some examination of defendant's counsel, it developed that the case had been previously continued on defendant's application. It also appeared that the alleged conversation of defendant's counsel in regard to the postponement of the trial until the following week was had with a stenographer in the office of the prosecuting attorney. Counsel claimed to have talked with Mr. Combs, the assistant prosecuting attorney, afterwards, and that he said it had been the understanding of his office that the case would not be tried, but that the judge had ordered the trial to proceed and that the prosecuting attorney had to change his mind. Counsel did not say he had any such agreement or understanding with Mr. Combs. Combs denied that he or anyone else had made any agreement to put the case over until the following week. He also denied telling the defendant's counsel that he had understood the case was to go over.

The trial judge heard the evidence concerning the alleged understanding and evidently found that there was no such understanding. At the most, the testimony of defendant's counsel indicated that such an understanding was with a stenographer, not shown to have been authorized to speak for the prosecuting attorney's office in such matters. He should not have relied upon such conversation. This was a matter for the trial judge to determine and we will not substitute our judgment for his. The defendant permitted his witness to get away

without permission of the court. The court evidently found he had no agreement with the prosecuting attorney. The trial court was justified in concluding that said witness was absent because of fault of defendant's counsel.

Aside from this, defendant had already had one continuance. Witness Tom Simpson testified to the execution and delivery of the deed, as did defendant himself, and numerous other witnesses testified to the exercise by defendant of acts of ownership and dominion over the property for many years.

The granting or refusal of a continuance rests largely in the discretion of the trial judge and his action in respect thereto is not ground for reversal, unless it is apparent that injustice has been done to the defendant. This rule is fully recognized in the cases cited by defendant. In those cases the testimony indicated in the application for continuance was vitally important and the refusals of continuances were held not to be in the proper exercise of sound discretion and to be erroneous.

. This assignment is overruled.

III. (a) Error is assigned to the admission in evidence of the triplicate original carbon of the tax receipt describing the property in question, wherein Min-
**Tax Receipt.** nie A. Sloan is named as owner. The same was marked paid on October 18, 1923, which was the very day when defendant testified before Judge Southern that he was the sole owner of the property. The objections made were that said exhibit was incompetent, irrelevant and immaterial, because the party named (the wife of defendant) was not a party to the suit and said instrument was not binding upon the defendant because it was not the record of an established fact.

The triplicate original was at least competent evidence that the taxes had been paid by some one. It was offered as part of the State's case in chief, but no objection was made that it was not proper as part of the State's case. The defendant subsequently took the stand

State v. Sloan.

and testified that he exercised complete ownership and dominion over the property, collected the rents and made the repairs. The payment of taxes is certainly an act of dominion over property. If defendant paid the taxes, he must have received a similar receipt and must have known that the tax books carried the name of his wife as owner. Therefore, to some extent at least, the receipt tended to contradict his claim that he thought he was the owner of the property. No reversible error was committed in the admission of said receipt.

(b) Complaint is also made of the admission in rebuttal of defendant's personal property tax receipt for 1923, based on a valuation of $150. It too appears to have been paid on October 18, 1923, which was the same date the tax upon the real estate was paid *Invited Error.* and the same day the defendant testified before Judge Southern. The objection made to its admission was that it was incompetent, irrelevant and immaterial and because it was not shown that it was defendant's tax receipt, that the same was for the tax two years before and that the exhibit was improper cross-examination.

The exhibit was offered in rebuttal by witness other than defendant and the objection that it was improper cross-examination was not well taken. The receipt was in the name of William B. Sloan, whose address is the same as that testified to by defendant. The court had permitted defendant to testify to his ownership of several thousand dollars' worth of personal property, as well as of other real estate. The amount of his personal property listed for taxes and upon which he paid taxes had some tendency to rebut his testimony concerning his large personal property holdings. While we do think that proof of ownership of other property was admissible for any purpose in the case, defendant opened the door himself and cannot explain. True, the receipt was based upon the statement made in 1922; but there was no evidence offered tending to show any increase in his holdings. The bonds which he claimed to own were

said to have been acquired before 1922. We find no reversible error in the admission of this evidence.

IV.  Complaint is made of the action of the court in refusing to admit certain testimony offered by defendant.  The particular pages of the record are pointed out. We have examined same and find that no offer of proof was made by defendant in any instance.  The **Excluded Testimony.** nature of the testimony expected does not appear from the questions asked.  The point is therefore not properly saved for review.  [38 Cyc. 1329; McCormick v. St. Louis, 166 Mo. 315, l. c. 338, 65 S. W. 1038; Hunter v. Waterloo Gasoline Engine Co., 260 S. W. (Mo.) 970, l. c. 973; Ruschenberg v. Railroad Co., 161 Mo. 70, l. c., 81 and cases cited; Gardner v. Eldridge, 149 Mo. App. 210, l. c. 217.]

V.  Error is assigned because the trial court refused to give four instructions asked by the defendant.

We think said instructions are correct statements of law.  The first three were converse instructions to the main instruction given by the court and they should have been given unless covered in such main instruction. [State v. Majors, 237 S. W. l. c. 488; State v. Hayes, 247 S. W. l. c. 168; State v. Shields, 296 Mo. l. c. 404; State v. Carr, 256 S. W. l. c. 1047.] However, the main instruction concluded with the words, "and unless you so find the facts to be, you will acquit the defendant."  These words sufficiently submitted the converse of the main instruction and the refusal of such converse instructions was not reversible error.  [State v. Dougherty, 287 Mo. 82, l. c. 90.]

The last of the defendant's four refused instructions was not a correct statement of the law, in that it did not require the jury to find that the deed from Mrs. Sloan to defendant was delivered to him.  It required the jury to find only that said deed was made and executed before a notary public.  If it had used only the word "made," some basis would appear for the conten-

tion that such word was equivalent, in the popular sense at least, to the words "made, executed and delivered."

VI.   (a) Instruction one, given by the court, is assailed because, in charging the jury as to the *"quantum"* of evidence required to convict, the jury was not told that the confession of defendant should not be considered. Confession. The cases of State v. Hunter, 181 Mo. 316, l. c. 337, and State v. Thornton, 245 Mo. 437, l. c. 444, are cited in support. In both cases the accused had made statements admitting the intentional falsity of his testimony upon which the prosecution was based. In the Thornton case the instruction defining corroboration was quite similar to the one here criticised. BROWN, P. J., there said:

"These instructions are erroneous, in that they fail to inform the jury that the falsity of defendant's evidence, as given by him before the grand jury, must be proven by at least one credible witness, *aside from any admissions or statements made by the defendant himself.*" (Italics ours).

The theory of the rule seems to be that the presumption of innocence of the crime of perjury is not overcome by statements of the accused admitting that his previous testimony was intentionally false, and thus such admissions are not in themselves sufficient corroboration of the testimony of a single witness as to such falsity. The rule as thus announced appears well established. It was so stated in the Hunter case, supra. It was also recognized in State v. Rhoten, 259 Mo. 424, and in State v. Hardiman, 277 Mo. 229. But in neither of the two cases last cited had the accused made any admission that he had testified falsely.

We think that the Hunter and Thornton cases are not in point here because the defendant *never made any confession* or admission that he had testified falsely. The most that can be said of the statement of defendant, which was testified to by witness Combs and referred to by counsel as a confession, is that it is a different explanation, consistent with the innocence of defendant,

309 Mo. Sup.—33.

as to how he came to testify as he did testify. He did not then admit that he had knowingly testified falsely. The facts there stated are entirely consistent with the innocence of defendant. The statement of defendant as testified to by Combs was as follows: "He said that he had made a mistake about it; that he had forgotten all about the fact that this property wasn't in his name. That it had come to him several years before, and he thought it was in his name, but now that he remembered, it was in the name of Minnie B. Sloan." It is apparent that there is nothing in said statement admitting guilt of willful perjury. On the contrary, it tends to show that defendant merely made an unintentional, but honest, mistake. The court did not err in failing to tell the jury that the statements of the defendant could not be considered in corroboration *because such statement did not tend to corroborate* the intentional falsity of his testimony.

(b) Instruction one is further criticised because it told the jury that, if defendant testified that he was the sole and undisputed owner in fee of the property and it was free of all encumbrances and was not in the name Incumbrance. of Minnie B. Sloan, then such matters were material in the case wherein he testified, while the indictment merely charged that it was a material question whether defendant was the sole and undisputed owner in fee of said property. The indictment charged that defendant testified falsely to all the matters which the instruction told the jury were material, if testified to by defendant.

The contention seems to be that instruction one broadened the issues made by the indictment in respect to what the material issues were. The question of whether or not one is the sole and undisputed owner of property depends as much upon the matter of encumbrances upon the property as it does upon the legal title to such property. One is not the undisputed owner of property against which the lien of a mortgage or deed of trust exists. This is not a case where alleged false testimony,

other than that charged in the indictment, is submitted to the jury. Defendant was fully informed in the indictment of the alleged false testimony, to-wit, that he had willfully, corruptly and falsely testified not only that the title to the property was in himself and not in his wife, but also that it was free and clear of encumbrances. Such instruction submitted to the jury only the question of whether such testimony was false and was corruptly and willfully given. The jury had nothing to do with the question of its materiality. That was for the court to declare as a matter of law, as was done in said instruction.

We find no reversible error in the giving of said instruction.

VII. Complaint is made of instruction three. The only part of it which seems to be criticised is as follows:

"The court instructs the jury that the evidence introduced as to other transactions, if any, is submitted to your consideration, for the sole purpose of shedding light (if they have that effect) upon the intent and motive of the defendant in the transaction set out in the indictment in this case, for which he is now on trial, and for no other purpose."

Defendant says there was no evidence of other transactions upon which to base this instruction. The instruction apparently refers to the ownership and purchase and sales of other property by defendant. The defendant evidently offered this evidence upon the theory that he was financially responsible upon the appeal bond in the Meyers case, which he signed as surety, without taking into consideration the property in question. The court admitted this character of testimony on the theory that it had some bearing upon the intent of defendant in giving his testimony. It does not appear to us how the fact that defendant may have been solvent and responsible, if he was, could affect the question of his guilt or innocence of testifying falsely in respect to the ownership of and encumbrance upon the property in question.

If he had owned millions of dollars of property, it would have constituted no defense in this case. This sort of evidence was not admissible for any purpose. The court would have been justified in telling the jury to disregard it entirely. The defendant cannot complain of the giving of said instruction.

The same considerations dispose of defendant's assignment 5. The court properly excluded evidence as to income from the sale of and payments upon other property. We have found no instance where the court excluded evidence of payments made by defendant upon the property in question.

VIII. Instruction 6 is assailed because no evidence justified it. It was the usual instruction upon the credibility of witnesses. The last paragraph is doubtless the part objected to, as the other two could not possibly be the subject of objection. The last paragraph reads:

*Credibility: Falsus in Uno.*

"If, upon a consideration of all the evidence you conclude that any witness has sworn wilfully falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony."

The court was amply justified in so instructing the jury. The evidence of defendant that his wife made, executed, acknowledged and delivered to him a deed to the property and that he delivered the same to some mysterious notary to be recorded and that he could not recall the name of the notary, in view of his contradictory statement to witness Combs that he had forgotten that the property was in his wife's name, together with the fact that the taxes on the property were paid on the very day he testified and the receipt therefor was issued in his wife's name, was so improbable as to justify the giving of the instruction. If such an instruction is ever authorized in any case, where no one of the witnesses has confessed that he has willfully sworn falsely, it was justified in the present case.

IX.   The last point to be noticed is in reference to alleged improper conduct of counsel for the State in propounding certain questions and in argument of the case.

(a)   In so far as the propounding of questions is concerned the court sustained objections made to all of them to which counsel has called our attention, except
**Objections to Questions.** one.   No rebuke of counsel was asked.   The propriety of sustaining all of such objections is not readily apparent to us.   But as the objections were sustained, they are out of the case.

In cross-examination, defendant was asked, "That was about eight days afterwards, though, when you began to see a little fire burning under you, wasn't it?" The objection made and overruled was that, "There is no evidence of any fire burning under him." The question referred to defendant's testimony in chief, wherein he had told of his visit to Judge Southern and his explanation to him that he had made a mistake in his testimony.   The evidence sought to be elicited by the question tended to show that defendant knew the prosecuting attorney was at that time "building a fire under him" by preparing a charge of perjury against him.   The evident purpose of the question was to show that defendant was then actuated by fear, rather than by an honest desire to correct his testimony.   The court properly overruled the objection.

(b)   As to alleged improper argument to the jury, defendant specifies four instances in his brief.   The first is found on pages 154 and 155 of the bill of exceptions. While defendant quotes this as one continuous statement,
**Argument to Jury.** it does not so appear in the record.   An objection was sustained as to the first part and the jury told to disregard the argument.   No request for reprimand was made.   No specific objection was lodged against the remainder of the argument quoted in defendant's brief, but an objection to a similar line of argument had been overruled and exception saved.   The argument made was in regard to the necessity of securing a bond in the Meyers case which would produce Meyers after his appeal to this court had been disposed of.   We

find no valid objection to the argument. Defendant had testified before Judge Southern concerning his ownership of the property in question in order to qualify himself as surety on that very appeal bond.

Defendant next quotes from argument found at page 159 of the bill of exceptions. The record fails to disclose that any objection was made to it. Even if the argument was improper, which we are not called upon to decide, the question is not before us.

Another instance on page 163 of the bill of exceptions is quoted in the brief. The statement was that the "stock wouldn't have anything to do with the qualification on that bond." The court sustained defendant's objection and that closed the incident. Hence, there is nothing now before us in reference to the particular argument.

But the trial court did overrule an objection, and exception was saved to the ruling, as to a statement quoted as follows: "Mrs. Sloan was here, but they never put Mrs. Sloan on the witness stand to say she had ever signed away her rights."

**Defendant's Wife As Witness.** At first appearance and in view of Section 4037, Revised Statutes 1919, which forbids reference to the fact that the accused failed to avail himself of the testimony of his wife, error is suggested. But when we examine the objection made and understand the connection in which the statement was made, we find that no reversible error was committed.

Immediately preceding the statement just quoted Mr. Alton, attorney for the State, had said: "But Mr. Heath says Mrs. Sloan was here, and the State could have put her on the witness stand, and denied the statement. Wasn't that a wonderful argument to make? Think of it for a moment! Did you catch the significance of it?" The statement first quoted then followed. In the same connection Mr. Alton then said: "They had the opportunity to put her on the stand to show she did not own the property and they are blaming us for not putting her on the stand." Reference by defendant's counsel to the failure of the State to call Mrs. Sloan was cer-

tainly improper.  But the trial court knew whether or not Mr. Heath had made such a statement and doubtless felt that he had opened the door to the error and in fact invited it, and that counsel was not in position to complain of it.

But whatever doubt we might have on the question of reversible error is removed by the objection made by the defendant's counsel.  It was: "Mr. Heath, I object to that.  There is no such evidence in the record."

The objection made was in fact no objection. · If, by the statement that there was no evidence in the record, counsel meant that he had made no such statement in his argument, no record is brought here to show that fact, as argument of defendant's counsel has not been preserved.  By overruling the objection, the trial court indicated that such an argument had been made.  We cannot convict the trial court of error under the circumstances.

X.  We have most carefully gone over the entire record and find no reversible error.  The indictment is not challenged, except as we have above considered it. The verdict and judgment are not questioned.  The evidence of defendant's guilt is clear and convincing.  His defense was inconsistent, contradictory and transparently flimsy.  He first stated that he had made a mistake in his testimony, as he had forgotten that this particular property belonged to his wife. At the trial he attempted to convince the jury that he was in fact the owner of the property, by reason of an unrecorded deed.  The jury probably concluded, and there is sound basis in the record for such conclusion, that defendant was attempting to acquit himself, when on trial for perjury, by committing further perjury.

The securing of the release of persons accused of crime and of men convicted of crime, while waiting trial or pending appeal, upon bonds which are valueless, is all too common.  A conviction for perjury in testifying to qualifications as surety upon such a bond, upon clear and satisfactory evidence, as is the case here, should

serve in the future as a solemn warning to others like minded. The defendant has shown no legal ground for complaint against the verdict. The case was fairly and impartially tried before a jury which dealt with defendant as leniently as the law permits. No reversible error was committed by the trial court.

Its judgment should be and is affirmed. All concur.