FRED H. FRAZIER, Respondent, v. FORD MOTOR COMPANY, a Corporation, Appellant, No. 43538—276 S. W. (2d) 95.

Court en Banc, February 14, 1955.
Rehearing Denied, March 14, 1955.

*Shughart & Thomson, Harry P. Thomson, Jr.,* and *John M. Kilroy* for appellant Ford Motor Company.

64

*John B. Moritz* and *Walter A. Raymond* for respondent.

[97] BOHLING, C.—Fred H. Frazier, plaintiff, secured a $9,000 verdict and judgment against the Ford Motor Company, a corporation, defendant, in a common law action for personal injuries sustained in the performance of his duties for defendant. He had rejected the Missouri Workmen's Compensation act. Plaintiff invoked the res ipsa loquitur doctrine. Defendant's answer was a general denial, coupled with pleas of contributory negligence, assumption of risk, and negligence of a fellow servant. Defendant contends that plaintiff failed to make a res ipsa case; that the court erred in admitting evidence and in giving and refusing instructions, and that the verdict is excessive.

Plaintiff had been an employee of defendant in the paint department on the second floor as a spray gun painter for about 21 years. He was transferred to defendant's sealer department on the third floor on Monday, September 26, 1949, and on Wednesday, the 28th, was injured while working in an automobile body on one of defendant's conveyor lines.

Defendant's overhead conveyor on the third floor of its plant in Kansas City is approximately 450 feet long. It is an oblong line and makes several curves. The conveyor chain is suspended by pressed steel ball bearing rollers spaced at intervals along the chain. The rollers travel on a 4 inch I beam, and are driven by an electric motor located in the body shop through a reduction gear with a sprocket on what is known in the record as a C-131 chain. The conveyor moves about 12 or 13 feet a minute when in operation.

A master switch at the motor is thrown by the electricians to start and stop the conveyor for the day's work. Other switches are located along the conveyor line. These are safety switches for stopping the conveyor and if one is turned off, the conveyor can be started again by turning it on if all the switches are in the "on" position. A shear pin, made out of soft material, is located in the main sprocket, and if the conveyor hangs, this pin will shear and cause the conveyor to stop. There was testimony the conveyor would stop and start at intervals during the day and would hang up at times for some reason; that when it sheared the pin the bodies would bounce backwards and if it "unclogged itself" without shearing the pin the line would bounce forward. The conveyor starts and stops gradually when operated by the electric switches.

Unfinished automobile bodies are suspended from the conveyor in the body shop by means of chains and "C" hooks attached to bolts on the body floor. The total length of a chain and hook is about 4 feet. The suspension is toward the center of the body, a swinging attachment. The bottom of the body moves about 8 inches above the floor.

The bodies pass through the bonderizing or spray and the lamp or drying tunnel, which is just large enough for the bodies to pass

through. They then enter the sealer department, move east on the conveyor down a ramp a distance of 12 to 15 feet, make a turn to the north for a few feet and then to the west, returning to the body shop.

Employees, known as "sealers," insert a sealer compound along the seams of the automobile body to prevent water from entering and the body from rusting. The sealer steps into the body upon its entering the sealer section and applies the compound by means of a long hose and calking gun operated under air pressure. Stepping into the suspended body with the hose and gun causes the body to sway a little.

A convertible automobile body, one without a top, entered the sealer department [98] late in the afternoon. Plaintiff entered the body with his hose and calking gun. He would finish his task in about a minute, while the body was moving approximately its length. Plaintiff testified that when the body started into the curve to the north "the line came to a sudden stop and throwed me off balance, lunged forward." "The body comes to an abrupt stop just momentarily and then it lurched forward violently and suddenly, * * just approximately the length of the body." This was unusual and unexpected, caused the suspended body to swing backward and forward and sideways and plaintiff to be thrown on his back to the bottom of the body in the rear and strike the sharp edges and hard surface of its metal parts. Plaintiff did not know what caused the body to stop and lurch. He did not do it.

Plaintiff got out of the body. He was sick, weak and trembling. He went to the men's rest room, about 20 feet away, and vomited. He returned and finished the convertible body. The conveyor had just started to move. Another job came through, but before he could finish it they shut the conveyor down for the day.

Plaintiff sustained injuries to the soft tissue of his back, right leg. and hip, neck and head. No bones were fractured. He returned to work for defendant the following Monday, losing two day's time. He testified his work causes him pain. He has continued to earn regular wages.

The sealer department is also referred to as the ramp and the sealer operation as the ramp job.

Defendant had testimony to the effect that the conveyor stopped and started gradually; that it stopped and started at irregular intervals during the day; that if the conveyor stopped it might cause an automobile body to swing 6 to 12 inches; that it was not possible for it to swing as contended by plaintiff, and that there was no unusual movement of the conveyor at the time involved. Witnesses for defendant also testified that they saw plaintiff as they were leaving the plant after work and plaintiff told them he had slipped on the

ramp on the third floor and hurt his knee. Plaintiff denied making the statements.

Defendant contends plaintiff failed to make a submissible res ipsa loquitur case because the evidence permitted of as equally reasonable inferences of a cause or causes of plaintiff's injuries for which defendant was not liable as a cause or causes for which defendant was liable, such as, among others, the movement of the conveyor being the result of an act of a fellow servant, or a latent defect in the mechanism which the defendant had no opportunity to discover.

■ The Missouri Workmen's Compensation act explicitly provides that the defenses of negligence of a fellow servant, contributory negligence of the plaintiff, and the risks assumed by the employee "shall be allowed to an employer who has elected to accept this chapter, if the employee has elected to reject it." § 287.080, RSMo 1949. Under the statute control by a fellow servant for whose acts the master is not responsible to plaintiff would not be that exclusive control in the master required for a res ipsa loquitur submission.

■ In Harke v. Haase, 335 Mo. 1104, 75 S. W. 2d 1001, 1003[7], we said: "What is a res ipsa loquitur case anyhow? Reduced to simple terms, does it not merely mean that negligence can be proved by circumstantial evidence and that certain circumstances, as to the character of an accident, are sufficient to take the case to the jury." The basis of the allowable inference "is the *doctrine of probabilities.*" (Emphasis ours.) Byers v. Essex Inv. Co., 281 Mo. 375, 219 S. W. 570, 571[5]. The doctrine is a rule of evidence, peculiar to the law of negligence, operating when applicable to make a prima facie case of negligence without direct proof thereof. It excuses a lack of precision in the proof.

In a res ipsa loquitur case the plaintiff has the burden of proving each factual ingredient necessary for a prima facie case. McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557, 563[5], 92 A. L. R. 641. This includes the burden of prima facie establishing [99] that defendant was negligent. Bond v. St. Louis-S. F. R. Co., 315 Mo. 987, 288 S. W. 777, 782[2]; Conser v. Atchison, T. & S. F. R. Co., Mo., No. 43,454, 266 S. W. 2d 587; Sleater v. John R. Thompson Co., Mo. App., 173 S. W. 2d 591, 592[2]. A factor bearing on the quantum of proof to make a submissible res ipsa case on defendant's negligence is the duty owed the plaintiff by the defendant.

It is stated in 35 Am. Jur. 920, Master and Servant, § 500: "Even though the defenses peculiar to the relation of master and servant embodied in the fellow servant rule and the rule as to assumption of risk are not regarded as fatal to the application of the rule res ipsa loquitur in its distinctive sense in all cases between parties in that relation, they necessarily confine the rule in its operation between such parties within narrower limits than when the relation of carrier and passenger is involved. *The res ipsa loquitur rule is never to be*

*applied except where the accident not only supports the conclusion of negligence on the part of the defendant, but also reasonably excludes every other, and obviously that condition is not satisfied in the case of a servant if the inference,* from the accident and its physical cause or causes alone, *that it was due to negligence for which the master would be responsible to the servant is no stronger or more reasonable than the inference that it was due to the negligence of a fellow servant, or to a risk which the injured servant had assumed for which the master would not be liable.''* (Italics ours.) See also Annotation, L. R. A. 1917E, 53, 124, 241; 65 C. J. S. 1011, Negligence, § 220(8), b, (b), aa; 57 C. J. S. 58, Master and Servant, § 501, nn. 24, 25; 38 Am. Jur. 1000, Negligence, § 303.

Missouri cases having the issue for determination are in accord with the above quoted text, as also are cases from other jurisdictions.

In Removich v. Bambrick Bros. Const. Co., 264 Mo. 43, 173 S. W. 686, 687, L. R. A. 1917E, 233, plaintiff, who was digging earth in a trench, was injured when a cable broke and allowed a bucket filled with earth to fall upon him. The court said: ''To make out a case for the application of this [the res ipsa] doctrine, the facts relied on ought to be such as reasonably to exclude all defensive inferences attributable by operation of law to the negligence of the plaintiff, *or that of a fellow servant* (absent a fellow-servant statute), defects in the lethal instrumentality which are latent, or so recent in happening as to afford no reasonable opportunity for their discovery, lack of causal connection, and the assumption of the usual hazards of the employment.'' (Italics ours.)

In Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. 2d 702, 705[7-9], plaintiff was injured while moving a steel truss when the chain by which the truss was suspended broke. In holding the plaintiff failed to make a submissible res ipsa case, the court said: ''Now a latent defect, not discoverable by any reasonable inspection, may have caused the chain to break, a cause not attributable to negligence on the part of any one; *or the chain,* on account of its size, weight, or other plainly discernible quality, *may have been obviously unfit for the purpose for which it was used, but* notwithstanding *was negligently selected and used by a fellow servant, negligence for which the master is in no wise responsible.* * * To make out a case for the application of the doctrine of res ipsa loquitur, the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed. * * While it is not necessary that they exclude every possible hypothesis except that of the defendant's negligence [Gordon v. Packing Co., 328 Mo. 123, 40 S. W. (2d) 693], it is entirely clear that, if two or more inferences can be equally well drawn from them, one of which points to negligence on the part of the defendant as the cause of plaintiff's injury, and the others to causes for which the defendant was in no way re-

sponsible, proof of such facts does not make out a prima facie case for plaintiff. * *'' (Italics ours.)

In Charlton v. Lovelace, 351 Mo. 364, 173 S. W. 2d 13, 18[5], 20[8], the above and [100] other authorities are reviewed in holding "plaintiff's evidence was not sufficient to exclude causes for which defendants were not responsible.'' The court, citing cases, also stated among other things: "In order to make out a prima facie case under the res ipsa loquitur doctrine the evidence must be such as to reasonably exclude the negligence of the injured as a contributing cause of the injury, to wit, 'that he was injured, without any fault on his own part.' '' See, among others, McGrath v. St. Louis Transit Co., 197 Mo. 97, 104(I), 94 S. W. 872, 874(1); Gibbs v. General Motors Co., 350 Mo. 431, 166 S. W. 2d 575, 581[8]; Sleater v. John R. Thompson Co., Mo. App., 173 S. W. 2d 591; Pauley v. Baltimore & O. R. Co., Mo. App., 215 S. W. 2d 78, 81[3]; Estes v. Estes, Mo. App., 127 S. W. 2d 78, 80; Hart v. Emery, Bird, Thayer D. G. Co., 233 Mo. App. 312, 118 S. W. 2d 509, 512[11]; Marceau v. Rutland R. Co., 211 N. Y. 203, 105 N. E. 206, 51 L. R. A. (NS) 1221, 1224, Ann. Cas. 1915C, 511; Prest-o-Lite Go. v. Skeel, 182 Ind. 593, 599, 106 N. E. 365, 367[6, 7]; Trim v. Fore River Ship Bldg. Co., 211 Mass. 593, 98 N. E. 591.

In specific negligence cases turning on circumstantial evidence the proof should establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn. Fritz v. St. Louis, I. M. & S. R. Co., 243 Mo. 62, 148 S. W. 74, 78 (c, 1, 2); Schoen v. Plaza Exp. Co., Mo., 206 S. W. 2d 536, 538[2]; Bowers v. Columbia Terminals Co., Mo. App., 213 S. W. 2d 663, 670[7]. Proof beyond a reasonable doubt as in criminal cases is not required.

Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. 2d 693, 697[6], bears most directly on the point of plaintiff's cited cases. Gordon was injured while cleaning an electric sausage machine when it suddenly and unexpectedly started without the electric switch being pressed. Plaintiff stresses the portion reading: " (2) The plaintiff's injury was due to some defect in the appliances furnishing the power rather than in the meat-grinding machine, and this doctrine is peculiarly applicable where, owing to the subtle and dangerous character of an electric current, the injury to the servant is due to a defective electrical appliance furnishing or controlling power or light.'' The Gordon case is not in conflict with the cases hereinbefore mentioned. It and the Grindstaff case were handed down by Division No. I of this court on the same day. Plaintiff in the Gordon case adduced testimony that the defect was in the electric switch and not the grinding machine; that neither he nor anyone else touched the electric switch on the occasion in question; that the switch had been out of order and the machine had started under like circumstances

on two or three occasions, and that the foreman had told him how to prevent this by placing a piece of paper between the two metal plates in the switch control.

The other cases relied on by plaintiff are Cruce v. Gulf, M. & O. R. Co., 358 Mo. 589, 216 S. W. 2d 78, 80; Jones v. Terminal R. Ass'n, Mo., 242 S. W. 2d 473, 475[1]; Whitaker v. Pitcairn, 351 Mo. 848, 174 S. W. 2d 163, 166 [1]. They were under the Federal Employers' Liability Act (45 U.S.C.A. § 51), making common carriers liable for injury or death to employees engaged in interstate commerce ''resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.'' The act abbrogated the fellow servant rule in instances within its provisions. Reed v. Director General of Railroads, 258 U. S. 92, 95, 42 S. Ct. 191, 66 L. Ed. 480; 56 C. J. S. 1144, § 355 d; 35 Am. Jur. 832, § 410, n. 14; § 399, n. 1. The carrier's liability under the act approaches its liability to a passenger and the cases are not controlling here. Some occurrences may be of such a nature as do not happen without a negligent cause chargeable under the law to the defendant. Statements critical of the Charlton and Grindstaff cases, supra, (see the Cruce case, supra) may apply to cases within the Federal act, but do not rule cases under provisions of the Missouri Workmen's Compensation act which make the negligence of a fellow servant a defense. See comment at 65 C. J. S. 1013, n. 18.

[101] We are directed to no evidence in the instant record as existed in the Gordon case giving rise to a more reasonable inference that plaintiff's injuries were the result of negligence chargeable to defendant than to negligence for which defendant was not liable in law; for instance, some act of a coemployee of plaintiff under their common foreman causing the movement of the conveyor to be momentarily stopped. The conveyor, according to plaintiff, started up again and plaintiff continued to work until quitting time. The reasonable inference is that the conveyor did not stop on account of some defect therein. Plaintiff may be able to make a res ipsa loquitur case but under the Removich, Grindstaff and other cases supra the instant record falls short of doing so.

Defendant claims error in the refusal of its requested instruction G. Plaintiff first says the refusal was proper because instruction G was repetitious of instructions C and E, instructions of a general nature on the burden resting upon plaintiff to prove his case.

Plaintiff does not contend the instruction misstated the law. It submitted the converse of plaintiff's verdict directing instruction on defendant's actionable negligence. After stating plaintiff's submitted theory of his case, it informed the jury that if plaintiff had not shown by a preponderance of all the credible evidence that defendant did negligently cause or permit the conveyor to make a sudden and unusual jerk and stop and to again start forward suddenly on the

occasion in question and that plaintiff received personal injuries as a direct result therefrom the verdict should be for defendant.

In criminal cases the refusal of a defendant's requested instruction correctly submitting the converse of the state's main instruction is reversible error, unless the state's instructions clearly submit the converse of the essential issue or issues involved. State v. Ledbetter, 332 Mo. 225, 58 S. W. 2d 453, 454; State v. Fraley, 342 Mo. 442, 116 S. W. 2d 17, 20[2-4]. The Fraley case also ruled that concluding the state's verdict directing instruction with the words "and unless you so find and believe from the evidence you should acquit the defendant," or words to like effect, was not a sufficient converse submission and did not justify the refusal of a requested proper converse instruction. The Fraley case expressly overruled conflicting holdings and observations in State v. Sloan, 309 Mo. 498, 274 S. W. 734, 738[6], and other cases mentioned in the Fraley case; and in so ruling stated: "Defendants in criminal cases, if they so desire, ought in justice have the right to submit their defense to the jury in a direct way by instructions. * * In civil cases defendants have the right to submit their defenses by instructions in a direct way."

In State v. Quinn, 344 Mo. 1072, 130 S. W. 2d 511, 513[3, 4], the state's contention that a given instruction informing the jury " 'if, upon consideration of all the evidence, you have a reasonable doubt of defendant's guilt, you should acquit,' " sufficiently covered defendant's converse instruction, justifying its refusal, was overruled.

In plaintiff's case of Relford v. Kansas City Pub. Serv. Co., Mo. App., 50 S. W. 2d 171, 173[3], defendant's refused instruction was found to ignore a ground of recovery submitted by plaintiff; but the court also stated that had it properly declared the law, it was "nothing more than the negative statement of the law already instructed upon," and its refusal was not reversible error. Earlier cases are to like effect; see Kirkpatrick v. American Creosoting Co., 225 Mo. App. 774, 37 S. W. 2d 996, 1004[22, 24], citing cases. Other civil cases appear to be more in harmony with State v. Fraley, supra.

The instant defendant's refused instruction submitted the converse of plaintiff's instruction on the merits of plaintiff's case and was not covered by other instructions on behalf of defendant. In Boles v. Dunham, Mo. App., 208 S. W. 480[3], the court held it was error to refuse a defendant's instruction presenting the converse of plaintiff's case, stating: "Defendant was undoubtedly entitled to it." See Davis v. [102] Springfield Hospital, Mo. App., 196 S. W. 104, 108[4].

In approving a defendant's submission converse to a plaintiff's verdict directing instruction in civil cases, we have said that the defendant is entitled to a proper converse instruction. Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. 2d 373, 378; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S. W. 2d 461, 466; Lindquist v. Kansas City Pub. Serv. Co., 350 Mo. 905, 169 S. W. 2d 366, 369[5]; Broderick v.

Brennan, Mo. App., 170 S. W. 2d 686, 687[1-3]. Like rulings have been made in res ipsa loquitur cases. West v. St. Louis Pub. Serv. Co., 361 Mo. 740, 236 S. W. 2d 308, 311[5]; McCarty v. Milgram Food Stores, Inc., Mo., 252 S. W. 2d 343, 344[1, 2]; Quigley v. St. Louis Pub. Serv. Co., Mo., 201 S. W. 2d 169, 170 [1-5].

In McCormick v. Kansas City, Mo., 262 S. W. 2d 868, 871[3], an order granting a new trial for the giving of an instruction submitting the negative of plaintiff's theory by hypothesizing the converse of plaintiff's submission or by hypothesizing facts which, if true, negatived an unsafe condition as submitted by plaintiff, was reversed and the judgment ordered reinstated. In holding the refusal of defendant's burden of proof instruction, fully covered by an instruction given on behalf of plaintiff, was not error, the court in Counts v. Coca-Cola Bottling Co., Mo. App., 149 S. W. 2d 418, 423[7], observed that defendant would have had a sound basis for complaint had the instruction hypothesized findings of fact upon an issue of fact in evidence.

In the instant case defendant had substantial evidence that plaintiff was not injured by any action of the conveyor; that the conveyor did not and could not have stopped and started in the manner described in the evidence on behalf of plaintiff. We conclude the defendant was entitled to a converse instruction bearing on the merits of plaintiff's submitted case. It appears that the same basic logic on the issue under discussion should apply in civil as in criminal cases.

 Plaintiff's verdict directing instruction, after hypothesizing certain findings, continued: "* * then you are instructed that from such facts aforesaid * * you may infer that the defendant was negligent; and you may so find, *unless you believe and find from all the facts and circumstances in evidence that the aforesaid occurrence, if so, was not due to the negligence of the defendant;* and * *." (Italics ours.) Defendant says the italicized clause shifted the burden of proof to defendant. The instruction follows in substance the conclusion suggested for a res ipsa submission in Harke v. Haase, 335 Mo. l.c. 1111, 75 S. W. 2d l.c. 1004.

Since McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557, the inference of a defendant's negligence in a res ipsa case is not conclusive on the jury although it be not rebutted. The inference is binding on the court in that under the law it is substantial evidence requiring the submission of the fact of negligence to the jury; but the facts of the occurrence, while warranting the inference of negligence, do not compel a finding by the jury that defendant was negligent. Harke v. Haase, supra, quoting Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Duncan v. St. Louis Pub. Serv. Co., 355 Mo. 733, 197 S. W. 2d 964, 966; Tabler v. Perry, 337 Mo. 154, 85 S. W. 2d 471, 475[7]; Turner v. Missouri-K.-T.

R. Co., 346 Mo. 28, 142 S. W. 2d 455, 460, 129 A. L. R. 829; Charlton v. Lovelace, 351 Mo. 364, 173 S. W. 2d 13, 17[4]; Cruce v. Gulf, M. & O. R. Co., 358 Mo. 589, 216 S. W. 2d 78, 82[7]; Conser v. Atchison, T. & S. F. R. Co., supra; Duncker v. St. Louis Pub. Serv. Co., Mo. App., 241 S. W. 2d 64, 66 [2, 4, 7]. "Unless you believe and find from all the facts and circumstances in evidence that the aforesaid occurrence" was not due to negligence of the defendant gives rise to the thought that there must be evidence of record to warrant a finding that defendant was not negligent, notwithstanding a defendant does not have the burden of establishing he was not negligent. However, the instruction, read as a whole and with [103] other instructions in the case, has been sustained as against defendant's presentation of error. Welch v. Thompson, 357 Mo. 703, 210 S. W. 2d 79, 85, 86.

Defendant complains of the admission of certain evidence over objection with respect to the extent of plaintiff's injuries and the amendment of plaintiff's petition at the close of all the evidence. Matters of this nature should not be live issues upon a retrial. The case was hard fought and there are incidents in the instant record foreign to the issues presented. Other contentions may be readily obviated without affecting plaintiff's submission.

The judgment is reversed and the cause is remanded. *Leedy, Hollingsworth, Ellison* and *Westhues,* JJ., concur; *Dalton,* J., concurs in result; *Hyde,* J., and *Cave,* Special Judge, dissent.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court en Banc.

PER CURIAM:—On motion for rehearing respondent contends that the requirement that the evidence reasonably exclude every other hypothesis than the defendant's negligence has been fully met and satisfied by plaintiff's evidence; and that the opinion erroneously failed to state the facts shown by the record, as follows: (1) that the fellow employees of plaintiff were forbidden to operate the *switch* to the conveyor line, as only foremen, electricians and maintenance men were permitted to do that; (2) that had anyone turned a *switch* to stop the conveyor line it would have stopped gradually, if operating normally; (3) that only two of defendant's employees were near at the particular time and neither of them turned a *switch* or saw anyone else do so; and (4) that plaintiff was standing in the suspended auto body and could not have reached the *switch* if he had tried.

It will be noted that all of this evidence is directed solely to the operation of the conveyor by an electric switch or switches, however, plaintiff testified, as the opinion shows, that when operated by the electric switches the conveyor starts and stops gradually with a maximum swing of six or seven inches. "If it is stopped with any of the switches, it will make a gradual stop." The evidence mentioned as having been omitted tends only to exclude the operation of the switches

as a cause of the violent lurch and swing backward and forward and sideways, but it did not exclude acts by fellow servants in other respects than the mere operation of an electric switch or switches and plaintiff's own testimony tends to show that the unusual action complained of was not due to the control or interference with the electric current by a switch or switches.

Respondent further contends that the opinion conflicts with the rule that "any negligence of a fellow employee making a servant's place of work unsafe is no defense to the master." The cases relied upon support the rule, but do not deal with the question as to whether the plaintiff has made a submissible case of negligence under the res ipsa loquitur doctrine.

It will not be necessary to review other assignments as to matters which are fully covered in the opinion.

The motion for a rehearing is overruled.