BERTHA BOEMER, Respondent, v. CENTRAL LEAD COMPANY, Appellant.

### St. Louis Court of Appeals, March 9, 1897.

1. **Damages**: PLEADING: ELECTION. In an action for damages, for the death of plaintiff's husband from injuries received while employed in defendant's mine, where the petition contained two counts, the first under section 7076 of the statute, and the second an attempt to unite this provision with the general damage act, but which was treated on the trial as a count under the latter act, the court properly overruled defendant's motion to compel plaintiff to elect, before trial, upon which she would stand.

2. **Pleading**: NEGLIGENCE: EVIDENCE: DEMURRER. But, where the petition relied solely on the neglect of defendant to inspect the mine, and to prop and furnish props, when needed, and there was no evidence to support either allegation, the court erred in refusing to sustain defendant's demurrer to the evidence.

*Appeal from the St. Francois Circuit Court.*—HON. JAMES D. FOX, Judge.

REVERSED AND REMANDED.

*Carter & Weber* for appellant.

There were two separate causes of action stated or attempted to be stated in the two counts of the petition, and improperly. R. S. 1889, chap. 115, art. 2, sec. 7074 (as amended, Sess. Acts 1891, p. 182); R. S. 1889, sec. 4426; Bliss on Code Plead. [2 Ed.], sec. 122, p. 204; *Sippery v. R'y*, 9 How. Pr. 83; *Meyer v. R'y*, 36 S. W. Rep. 367, at 368; *Bronell v. R. R.*, 47 Mo. 239, 243.

A motion to compel an election was the proper pleading. *Mooney v. Kennett*, 19 Mo. 551; *Bobb v. Woodward*, 42 *Id.* 482, 487; *Christal v. Craig*, 80 *Id.*

367, 371; *Harris v. R. R.*, 51 Mo. App. 125; *Crumpley v. R. R.*, 98 Mo. 34; *King v. R. R.*, *Id.* 235.

An employee assumes all risks incident to the business in which he engages and the duties he engages to perform. *Allcorn v. R. R.*, 108 Mo. 81, 97, 99; *Williams v. R. R.*, 119 *Id.* 316, 323; *Carroll v. Rapid Transit Co.*, 107 *Id.* 653, 663; *Henry v. R. R.*, 113 *Id.* 525, 537; *Guffey v. R. R.*, 53 Mo. App. 462, 469; *Watson v. Coal Co.*, 52 Mo. App. 366, 373; *Steinhauser v. Spraul*, 127 Mo. 541, 563.

Instruction number 1 given for plaintiff improperly defines the duties of a master, and incorrectly states the law of the case. Webb's Pollock on Torts [Am. Ed. 1894], pp. 192, 194, and notes; *Dowling v. Allen & Co.*, 74 Mo. 13; *Price v. R. R.*, 77 *Id.* 508; *Gleason v. Mfg. Co.*, 94 *Id.* 201; *Watson v. Coal Co.*, *supra; Williams v. R. R.*, *supra; Junior v. Elec. L. & P. Co.*, 127 Mo. 79.

The court erred in giving instruction number 2 for plaintiff. 2 Sedg. on Dam. [8 Ed.], sec. 577; *R. R. v. Wildow*, 52 Ill. 290; *R. R. v. Austin*, 69 *Id.* 426; *Kelley v. R. R.*, 48 Fed. Rep. 663; *Shaw v. Boston*, etc., 8 Gray, 45; *R'y v. Finley*, 32 S. W. Rep. 51; *R. R. v. Rowser*, 57 Tex. 375; *March v. Walker*, 48 *Id.* 375; *Lierman v. R. R.*, 52 N. W. Rep. (Wis.) 91.

*B. B. Cahoon, W. N. Nalle,* and *I. R. Thomason* for respondent.

Plaintiff's right of action is given and controlled by Revised Statutes 1889, article 2, chapter 115, as amended in Session Acts 1891, page 182.

The relation of master and servant was not necessarily involved, nor the principles of law governing that relation. The duty enjoined by statute upon appellant was to secure Boemer's life, and appellant

can not be permitted to relieve itself of this statutory duty. *Leslie v. Rich Hill C. M. Co.*, 110 Mo. 41.

The omission of appellant to keep a sufficient supply of timber, and "not to use" was negligence *per se*. *Pike v. Eddy*, 53 Mo. App. 509; *McNown v. R. R.*, 55 *Id*. 585; *Dahlstrom v. R'y*, 108 Mo. 525.

The power to determine whether, and when, the timber is to be used as props, does not vest in the owner, or his agent, but in the judiciary, under the statute. Sedg. Con. & Stat. Lim. [2 Ed.] 122; *Id*. 360, note a; *Lynan v. Walker*, 35 Cal. 634.

Appellant in not keeping a sufficient supply of timber, and determining that it was not required to be used as props, and requiring Boemer "at all times not to properly secure the said workings from caving in," assumed all risks of injury to him by reason of the caving in of the roof. *Pelty v. R. R.*, 88 Mo. 306; *O'Donnell v. Patton*, 117 Mo. 13; *Fusile v. R'y*, 45 Mo. App. 535; *Benton v. R'y*, 32 *Id*. 455.

The knowledge of Boemer that the props were not used would not relieve appellant. *Huhn v. R'y*, 92 Mo. 440; *Banks v. R'y*, 40 Mo. App. 458.

If Boemer had disobeyed appellant's order it would have been a misdemeanor under section 7075 of the statute, and in obeying it he in no sense contributed to his own injury and death. *Briesching v. Gas Co.*, 73 Mo. 219; *Langan v. R'y*, 72 *Id*. 392; *McGee v. R. R.*, 92 *Id*. 208; *Schultz v. R'y*, 32 Mo. App. 438; *Foster v. R'y*, 115 Mo. 179; *Craig v. R. R.*, 54 Mo. App. 523; *Blanton v. Dold*, 109 Mo. 64; *Schroeder v. R'y*, 108 *Id*. 322; *Jones v. Packet Co.*, 43 Mo. App. 398; *Higgins v. R'y*, *Id*. 547; *Fogus v. R. R.*, 50 *Id*. 250; *Ballard v. R'y*, 51 *Id*. 453; *Stevens v. R. R.*, 96 Mo. at 212; *Shortel v. St. Joseph*, 104 *Id*. 114; *Koegan v. Kavanaugh*, 62 Mo. 232.

BLAND, P. J.—The first count of the petition was bottomed upon section 7076, Revised Statutes 1889. The second count is an attempt to commingle this statutory provision with the general damage act, but was treated upon the trial as a count under the general damage act. The trial court, with this view of the second count, properly overruled the defendant's motion to compel the plaintiff, before trial, to elect upon which count she would rely. She had the undoubted right to state her cause of action in both forms, for one and the same injury, and to elect at the close of the testimony, if required, upon which count she would submit her case, by instructions to the jury. This was, in effect, done by an instruction of the court to the jury, to find for the defendant on the first count.

<span style="float:left">PLEADING: election.</span>

William Boemer, the plaintiff's husband, on September 7, 1894, while working in defendant's mine, was injured by a large rock falling upon him from the roof of the mine, from which injury he died in a few days thereafter. The negligence complained of and to which the pleader attributes the injury and death of plaintiff's husband, is stated as follows:

<span style="float:left">PLEADING: negligence: evidence: demurrer.</span>

"Defendant negligently failed to cause its said mine to be inspected, negligently failed to keep a sufficient supply of timber for props to keep the workings and roof of said mines from caving in, and negligently failed to properly secure the said workings of the mines, and roof thereon from caving in, and further negligently failed to send down into its said mines, all such props when required, the said inspection timber and props being then and there required." The evidence, undisputed, was that the stope or drift, in which Boemer was injured, was three hundred feet

under ground; ninety feet long from the shaft; twelve to eighteen feet wide, and five to eight feet high; lime stone roof of unknown thickness; that two rock pillars had been left to support the roof; that wooden pillars were unnecessary as props, and could not be used while the mine was being worked, for the reason that the blasting necessary to be done would knock them out; that the mine had been, up to that time, daily inspected by the employees of the company, and that it was the duty of the drill and blasting men to inspect the roofs at and near where a shot or shots had been fired, immediately after firing them off. These inspections were made by the superintendent and drill men, by sounding the roof with a hammer, with a view of detecting any loose rock or rocks liable to tumble down. The state mine inspector had also inspected this mine, a short time before the injury, and found it in safe condition, so he testified. The ore was disseminated and taken out by blasting out the rock containing it. The tendency of the disseminated lead in the drift where Boemer was injured, was upward from the point of injury. To bring down rock containing the ore, six holes had been drilled by Boemer and his helper, in the right hand corner, going in the drift; one of these was about one foot under the roof, and ranged upward. These drill holes were all charged with dynamite, and shot off by means of a battery operated at the bottom of the shaft. They were fired by the shift boss. About five minutes after the firing, the boss sent Boemer into the drift to see if all the shots had gone off. He was told to go to the left. When discovered a few minutes afterwards he was found pinioned to the floor by a large rock lying across his breast or shoulders, about five feet from the end of the drift where the shots had been fired, with his feet toward the end, and his head toward the shaft.

The rock which had caught him had fallen from the roof immediately over where he was found. No one was with him when he was sent back or when he was caught by the falling rock. It was the custom to wait from five to ten minutes after firing dynamite shots, before going back to see the effect of the blast, and to ascertain if all the shots had gone off. This service was performed by the drill men, and was one of the duties of Boemer as a drill man. It was the practice to go to the opposite side from the blasts to ascertain the result of a shot, as a precaution to avoid rock which might be loosened from the roof, by the blast, and fall. Boemer was instructed to do this in this particular instance. Why he went to the point where he was caught by the falling rock, does not appear from any testimony. The light he had was an ordinary miner's lamp, and did not furnish a brilliant illumination. The probabilities from the position in which he was found are, that he went in the immediate vicinity of the drill holes to ascertain if they had all fired; had turned around to go back to the shaft, and was then caught by this stone falling upon him from the roof. Whether it was negligence to furnish Boemer with nothing but an ordinary miner's lamp by which to perform the mission he was sent on, by the boss, is not for us to decide, for this was not averred as negligence, nor was it relied on or submitted to the jury on the trial. There is no evidence that the rock which fell upon Boemer was loose before these shots were fired, nor evidence that there were any seams in the roof, at or near the locality of this rock. The evidence is, that the roof, after each blast, was sounded by the drillers before doing any further work. The reasonable deduction from the evidence is that this rock was loosened, and caused to fall by the force of the shots; to discover the effect of which Boemer was

on his tour of inspection when hurt.. Under the evidence this was a part of his duty. If this be so, he assumed the risk, and must have known the danger, for he was no stranger in the mine, nor unfamiliar with the processes and forces used in operating the mine, for he had for some months performed daily like services in this mine. The petition counts solely on negligence to inspect, and failure to prop and furnish props, when needed. There is no evidence to support either allegation. As we have seen, the mine was inspected daily, in fact all who worked in the mine were required, and so far as the evidence discloses, did make frequent and all necessary inspection of the roof. The undisputed testimony is that props were not necessary to the safety of the roof, and that they could not be used in this particular drift. The evidence fails to disclose that the mine was unsafe, by reason of a want of sufficient props, or any props to support the roof. The reasonable inference from all the testimony is, that the rock which caught Boemer was loosened by the shots that had just been made. If this be so, there was no negligence on the part of the defendant, unless it was negligence to send Boemer into the drift so soon after the shots, with insufficient light. Of this, however, we express no opinion, as it is not in the case. It follows from what has been said that defendant's demurrer to the evidence should have been sustained.

Judgment reversed and cause remanded. All concur.