EMMA FOWLER, Respondent, v. SANTA FE ELE-
VATOR CO., Appellant.

Kansas City Court of Appeals, April 4, 1910.

MASTER AND SERVANT: Producing Cause of Injury: Conjecture.
Where a servant's widow claimed for his fatal injuries caused
by falling between a carrying and a returning belt revolving
around a pulley near where he was working, to which injury
there were no witnesses and the proof of the manner of which
depended upon inference alone, the evidence showing that his
death might have resulted from several causes different from the
one claimed for: *Held*, there could be no recovery, since where
the evidence shows several causes from which an injury may
have resulted, for some of which the master would be liable, and
for others not, the servant must show with reasonable certainty
that the injury resulted from the cause alleged.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

REVERSED.

*A. F. Smith, Boyle & Howell, Thomas R. Morrow, Cyrus Crane* and *James P. Gilmore* for appellant.

Under the evidence in this case the verdict was
the result of conjecture. Such a verdict should not
be upheld. Sheldon v. Railroad Co., 29 Barb. 226; Byer-
ly v. Consolidated, etc., Co., 130 Mo. App. 593, 603;
Oglesbay v. Railway Co., 177 Mo. 272; Moore v. Rail-
way, 28 Mo. App. 622; Smart v. Kansas City, 91 Mo.
App. 586; Cothron v. Packing Co., 98 Mo. App. 343;
Browning v. Chicago, etc., Co., 106 Mo. App. 729; Young
v. Railway, 113 Mo. App. 636; Caudle v. Kirkbride, 117
Mo. App. 412; Demaet v. Storage Co., 121 Mo. App. 92;
Hamilton v. Railway, 123 Mo. App. 619; Fuchs v. St.
Louis, 167 Mo. 620; Warner v. Railroad, 178 Mo. 131;
Goransson v. Manufacturing Co., 186 Mo. 300; Trigg
v. Ozark, etc., Co., 187 Mo. 227; McGrath v. Transit
Co., 197 Mo. 104.

*Bird & Pope* for respondent.

(1)   A reading of the record will show that Fowler could not have come to his death in the manner claimed by the defendant; all the facts and circumstances point to the specific negligence charged as the only reasonable and rational explanation of his death, and that it could not be accounted for upon any other theory, equally as reasonable and logical, considering all the facts and circumstances shown by the evidence. Nephler v. Woodward, 200 Mo. 179; Lynch v. Railway, 208 Mo. 2; Moriarity v. S. & S. Co., 132 Mo. App. 650; Reynolds v. Met., 136 Mo. App. 289; Adams v. Min. Co., 12 Id. 637; 89 Pac. 624.   (2)   Even where the evidence is uncontradicted its reasonableness is for the jury. Porter v. Stock Yards Co., 213 Mo. 372; Gannon v. Gas Co., 145 Mo. 503; Gregory v. Chambers, 78 Mo. 298; Bradford v. Randolph, 45 Mo. 426; Quock Ting v. U. S., 140 U. S. 417; Ry. Co. v. Colliati, 75 Kan. 56, 88 Pac. 534.   (3)   And if there is any evidence on the issue, the jury must decide. Porter v. Stock Yards Co., 213 Mo. 372.

ELLISON, J.—Plaintiff's husband was killed, in the State of Kansas, while engaged in the service of defendant Elevator Company in its elevator in that State.   She charged his death to defendant's negligence and brought this action to recover damages.   She had judgment in the trial court for six thousand dollars. Originally there were joined with this defendant, the Santa Fe Grain Company and the Atchison, Topeka & Santa Fe Railroad Company, but the action was dismissed as to them.

No one saw how deceased was killed but his death occurred on the second floor of the elevator.   On this floor there was a large belt operated from the second floor into an annex on the north, with a floor about five feet higher than the main one.   The distance was one

hundred and eighty feet and the belt was therefore three hundred and sixty feet long. It is described as the upper and lower belt; that is, that part running north into the annex was called the upper and that part returning was called the lower belt. It was operated by a large pulley on the main floor which was revolved with great rapidity. The pulley was set between two upright timbers, one foot square and nearly four feet apart. The belt was three feet wide and pliable, so that by means of contrivances along its way as it went into the annex the edges were turned up in such manner as that it would hold grain. It (the upper portion) was therefore also called the carrying belt, and as it returned it was the lower or returning belt. Near the pulley over which the belt ran was a grain spout with a "slide" for opening and closing. When the slide was pulled open grain would run out onto the rapidly moving upper belt and be carried into the annex where it was discharged in a bin. A part of the daily duties of deceased was to open and close the spout and he was therefore sometimes designated as the "spouter." The spout, belt and pulley were a few feet above the floor and the upper and lower portions of the belt near these were about sixteen inches apart. In order to get to the spout, what was called a runway was constructed near the side and parallel with the belt and with about the same slope towards the pulley. It was an inch or two higher than the lower belt and about fifteen inches lower than the upper one. It consisted of a single board, thirteen or fourteen feet long, two inches thick and ten inches wide. Any one wishing to open or close the spout would walk to the end of the runway, stoop over and raise or lower the slide. The runway did not have a handrail and it was made slick from use and the crushing under foot of particles of grain which would fall upon it from time to time. As already stated, no one saw deceased come to his death; but it is plaintiff's theory that he was on the runway, going to the spout, or at the spout, and

slipped and fell between the upper and lower belt, onto the latter, and was thus carried by it to the pulley and crushed between it and the belt and by being revolved around so that different parts of his body struck nearby timbers. If he was at the spout the upper belt would be a little below his knees. South of, and about twenty-two inches from the timbers supporting the pulley and seven and one-half inches from the south side of the pulley itself, was what was called an elevator leg, which was a hollow upright inside of which was a chain of carrying cups for hoisting grain. A cleat was nailed on this leg which was only six and a quarter inches from the pulley. A noise like two or three loud clappings of the hands was heard by persons in other parts of the building and one or more came to see the cause. They found deceased fastened upright in between the pulley and the "leg." His feet were two feet above the floor, and he appeared to be fastened a little above the hips. No effort was made to get him out by lifting up, but a part of the elevator leg was cut away so that he could be taken out. His body was crushed, his leg broken and his head and eye were injured, and there was much blood about him. Splotches or smears of blood appeared nearby, some of it on the belt. Defendant insists that these probably came from blood spurting from him as he was fastened in the upright position, or from the hands of those who came to his assistance and took him down.

There was more than one cause of negligence charged, but the case was submitted to the jury, at plaintiff's instance, on the ground that defendant was negligent in not having a handrail on the runway and that in consequence thereof the deceased, while on the runway in discharge of his duty in going to or returning from the grain spout, fell onto the belt. The petition charged that while upon the runway and in reaching across and over the belt to pull the slide in the grain spout, he was caught therein and drawn between the

belt and pulley.    Defendant asked a peremptory instruction directing the jury to find for it on the ground that plaintiff had failed to make out a case.

Founded upon the rule which requires that he who affirms an actionable cause against another, must show with a reasonable degree of certainty that such cause exists, is the statement of law that if an injury has resulted to a person from one of several causes, for some of which the party charged would be liable and for others not, the party making the charge must show with reasonable certainty that the cause for which the party accused is liable, produced the result.    [Warner v. Ry. Co., 178 Mo. 125; Trigg v. Ozark Land & Lumber Co., 187 Mo. 227; McGrath v. Transit Co., 197 Mo. 97; Smart v. Kansas City, 91 Mo. App. 586.]    Otherwise, the finding of a producing cause is left to conjecture, and that is never allowable.

To uphold the judgment in this case we must find that the plaintiff has produced tangible and substantial evidence that the deceased slipped on the runway or running board while walking along it, or while engaged with the slide at the grain spout, and fell onto the belt whereby he was conveyed to the pulley and mangled to his death by being rolled between it and the belt and by being whirled and beat against near-by timbers; and that the absence of a handrail caused him to fall.    To write down in full the course of reasoning indulged in by plaintiff to show that deceased's death was caused in that one way, on account of the absence of a handrail, would occupy much space and serve no purpose. We have gone over the record, assisted by counsel, who have left no point in plaintiff's behalf untouched, and find no case was made for the jury.    In our opinion defendant has suggested more than one theory of how the death was caused, which is more entitled to belief than that attempted to be shown by plaintiff.    Indeed we cannot understand how, within any reasonable de-

gree of probability, it could have occurred as claimed by plaintiff. The evidence shows the upper belt was running north, away from the pulley, and timbers supporting it; and the lower belt was running south, towards the pulley. The belt was three feet wide and if deceased fell upon the upper part he would inevitably have been carried away from the pulley and all danger. To have been carried into the pulley and timbers about it, he must have fallen upon, or gotten upon, the lower belt. How could that be done? The runway board ran along near to and parallel with the belts, the lower belt being one or two inches below the board and the upper one not more than sixteen inches above. It was said by plaintiff that the upper one was not quite even with or as high as deceased's knees. How could he fall *between* the two belts where the space was scarcely wide enough for him to have crawled in if they had been stationary? Suppositions might be indulged in showing remote possibilities of how he might have fallen off the runway and gotten onto the lower belt, but they are so entirely within mere conjecture that we should not entertain them. If plaintiff comes nearer specifically naming one point than another along the runway as the place where deceased fell, it is at the end when he was leaning over the belt to adjust the slide in the grain spout. But that was the upper belt, which, as has been stated, was three feet wide, the width of an ordinary single bed, and it would have afforded him ample room upon which to lie and be carried away from danger on to the receptacle in which the grain was dumped. If he did not fall upon it so as to lie there securely, he would have fallen to the floor, between four and five feet below.

The foregoing makes it unnecessary to consider the point made that the defect and its danger was better known to deceased than to defendant and that it was a risk assumed by him. The judgment is reversed. *Broad-*

*dus, P. J.,* and *Johnson, J.,* concur and wish me to say that they are also of the opinion that the case does not show defendant to have been guilty of any negligence.