Evert B. Mitchell, Respondent, v. Westport Hotel Operating
Company, Appellant.*—19 S. W. (2d) 528.

Kansas City Court of Appeals.   June 10, 1929.

*Conrad & Durham* for appellant.

*Clif Langsdale* for respondent.

BLAND, J.—This is an action for damages for personal injuries.
There was a verdict and judgment in favor of plaintiff in the sum
of $3,000.   Defendant has appealed.

Plaintiff was the only witness at the trial other than the medical
witnesses.   His testimony tends to show that on July 10, 1925, he

was employed by the defendant who was engaged in constructing a building in Kansas City known as the President Hotel. Plaintiff was an iron worker of ten years' experience. At the time of his injury he was engaged with another employee of the defendant, one Smith, in moving a steel I-beam from a pile of such beams. Smith stumbled over a board and dropped his end of the beam. As a result of Smith dropping his end of the beam plaintiff, at the other end of the beam, was thrown resulting in his injury.

The steel frame work of the building had been erected to the 8th or 9th floor. Plaintiff on the morning in question came to work at eight o'clock and was working on the ground floor with three other employees, one of whom was Smith, the foreman. These four were engaged from eight to nine A. M. in moving steel I-beams from a pile of a considerable number to a hoist. The hoist conveyed them to an upper floor where they were being used to construct a scaffold for the use of bricklayers. About nine A. M. Smith sent two of these employees to work upon an upper floor, Smith and plaintiff remaining below. Four more beams were needed upon the upper floor and Smith said to plaintiff "lets carry them over to the hoist." Plaintiff and Smith then proceeded to take the additional beams from the pile to the hoist. One of the beams was lifted from the pile and carried to the hoist without accident to plaintiff or Smith.

There is no testimony as to the number of beams in the pile or the way in which they were piled at the time Smith fell, except that the pile was about two and one-half feet in height and that the length of the pile was from north to south. It does not appear in the evidence as to when or by whom the beams were piled. They were fourteen feet long and weighed about 300 pounds each. They were eight inches in width and four inches thick at the flanges. Two and one-half or three feet west of the south end of the pile of beams was a mortar box. This box was about twelve to fourteen inches high, five feet in width and ten feet long. Extending toward the north from the bottom of the northeast corner of the mortar box was a 1x10-inch brace board. This board was nailed to the mortar box so that the ten-inch dimension extended up from the floor. It extended northward from the mortar box about two and one-half or three feet. There was another board nailed to the brace board about two feet from the mortar box which ran southward and upward at an angle and was attached to the mortar box. At the other or north end of the pile of beams, and about two feet west thereof, was a pine column running up from the floor. This column was aobut four to six feet south of the north end of said pile of beams. There was a space of from five to seven and one-half feet between the pine column and the end of the brace board. The hoist, to which the beams were being removed, was twenty-five or thirty feet

southwest of the pile. In order to get the beams between the column and the mortar box it was necessary to swing the north end of the beam around to the northeast while the south end was brought up to the northwest and around the mortar box and the brace board. In this way the south end of the beam could be headed toward the hoist and when so headed the center portion of the beam was over the pile. There is no evidence of any other passageway over which the beams were or could have been carried.

Just before the accident Smith took hold of the south end of the beam and asked plaintiff to take hold of the other end. They raised the beam from the pile and started to the passageway when "the pile started to roll." Smith in his efforts to get away from the rolling beams stumbled and tripped over the brace board and dropped his end of the beam. The dropping of the beam and the additional weight upon him threw plaintiff to the left and he fell to the cement floor on his left side.

Plaintiff testified that he did not know what started the other beams to rolling, but that they were smooth and painted and had a highly polished surface and that iron against iron has a tendency to slide; that such beams as these will slide "even on wood." Apparently the beams on the pile were caused to roll by the removal of the beam in question. Just what was done to cause the pile to roll is not disclosed in the testimony, other than that a beam was taken therefrom.

The petition alleges that plaintiff was in the employ of the defendant as an iron worker and that he was ordered and directed to assist the foreman of the defendant in removing the beam in question; that while plaintiff and the foreman were endeavoring to remove the beam from the pile the other I-beams in said pile started to roll and fall towards plaintiff and the foreman thereby causing the foreman, in his efforts to get away from the rolling and falling beams, to let loose and drop the end of the beam that he was carrying causing plaintiff to be injured. The negligence charged in the petition and relied upon by plaintiff reads as follows:

"For other and further assignment of negligence against the defendant, plaintiff states that defendant negligently ordered and directed plaintiff to assist in removing said I-beam from said pile while the said foreman was standing close to brace boards stuck out from a mortar box on and close to the floor of a distance of about ten inches, when said defendant, its said agent and foreman knew, or by the exercise of ordinary care would have known, that the act of removing said beams from said pile as aforesaid might and would cause other beams in said pile to roll in and from said pile and towards plaintiff and said foreman, and that said foreman, in his efforts to get away from said falling and rolling beams, might and

would trip and stumble on and over said brace boards, and let loose of and drop his end of said beam and cause plaintiff to be injured. Plaintiff states that his injuries herein complained of were caused by the said negligence of the defendant.''

It is insisted by the defendant that the court erred in refusing to give its peremptory instruction in the nature of a demurrer to the evidence. We think this contention is well taken. The petition is grounded solely upon the alleged negligent order. It does not allege any negligence on the part of the defendant in furnishing plaintiff a safe place to work, or in failing to furnish sufficient help, or in failing to furnish sufficient or safe tools, or a negligent method of doing the work, or that plaintiff was inexperienced and defendant failed to warn him. As before stated the sole negligence alleged is the order of the foreman to plaintiff to assist in moving the beam when he knew, or should have known, that the work of removing the beam might and would cause the other beams in the pile to roll toward him and plaintiff and that in the effort of the foreman to get away the latter might and would trip and stumble over the brace board and let loose or drop his end of the beam.

Plaintiff does not claim that Smith was negligent in the way in which he carried the beam, and it is substantially admitted that in the work of carrying the beam Smith was a fellow-servant of plaintiff, and if plaintiff was injured solely by the negligence of Smith in carrying the beam defendant is not liable. There is no negligence alleged or claimed in reference to the way in which the beams were piled, either in the pile itself nor the position of the beams in reference to the mortar box and the brace board. There is no allegation or claim that plaintiff was inexperienced. In fact the only claim made in his brief by plaintiff is:

''So, after all, the one act of the master that under all the circumstances was negligent, was the order of the foreman to plaintiff to assist in removing the beam from the pile and in carrying it along the designated path.''

There is no question but that plaintiff assumed all the risk ordinarily incident to the execution of the order given him by Smith in the latter's capacity as foreman. [Cummings v. Collins, 61 Mo. 520, 524; Paul v. Florence Mining Co., 80 Wis. 350; Millerick v. Wing, 117 N. Y. S. 1070.] Plaintiff was an experienced iron worker. The order of the foreman relied upon by plaintiff was to do no other than the usual and ordinary work of plaintiff's employment in the same way that he had theretofore been doing it. It is true that four men had been doing the work but there is no allegation or claim that there was negligence in failing to furnish sufficient help. The so called order was merely a direction to engage in the general work that was in progress. There was no element of

coercion in the order. It was not given in an imperious manner allowing plaintiff no time for a consideration of the danger of obeying it. It was in the general line of the work and plaintiff knew as much about the danger of the work as the foreman. [English v. Rand Shoe Co., 145 Mo. App. 439, 452; Wilson v. Tremont et al., 159 Mass. 154; Fitzgerald v. Honkomp, 44 Ill. App. 365.]

Unless there was some negligence on the part of the defendant in relation to the piling of the beams or the situation of the brace boards, or the like, plaintiff assumed the risk of the beams falling, by reason of the tendency of iron against iron to slide, and the falling over the brace boards by Smith. [Minter v. Gidinsky, 228 S. W. 1075; Boemer v. Central Lead Co., 69 Mo. App. 601.] In the Minter case, l. c. 1078 it was said:

"There is no question but that the servant assumes the risks incident to his employment. [Minnier v. Ry. Co., 167 Mo. 99, 113; 66 S. W. 1072; Smith v. Kansas City, 125 Mo. App. 150, 155, 101 S. W. 1118.] It is equally well settled that the servant never assumes the risk of his master's negligence; therefore in this case plaintiff assumed the risk of the injury incident to the liability of the ditch caving in that could not be avoided by the exercise of ordinary care on the part of the defendants."

It may have been that the order of Smith, in his capacity as foreman, was to do a dangerous piece of work, but it is well settled that the mere fact that the work is dangerous does not constitute negligence on the part of the master where the danger arises by reason of the inherent nature of the work and the servant is not inexperienced. [39 C. J. 483.] Where danger is inherent in the work and known to the servant the master is guilty of no negligence and the servant assumes the risk.

The contention of the defendant that the petition fails to state a cause of action is well taken. The petition merely alleges that the work was dangerous. The mere fact that the foreman directed plaintiff to engage in a dangerous work did not constitute negligence on the part of the defendant. It is true that the petition alleges that the order was negligent but this is an allegation of a mere conclusion. [Sabol v. Cooperage Co., 313 Mo. 527, 542.]

We have examined the cases cited by plaintiff and find them not in point. In the case of Stuart v. Standard Oil Co., 244 S. W. 970, the petition not only pleaded a negligent order because it entailed danger, but it alleged that the master was negligent in not furnishing a ladder to plaintiff for plaintiff's use instead of an I-beam and the case was submitted to the jury as to the master, not upon the alleged negligent order but upon the negligence in failing to furnish the ladder. It was submitted as to the foreman upon

the issue of the alleged negligent order, but the verdict was in favor of him.

In the case of Wright v. Berry Iron & Steel Co., 250 S. W. 942, the negligence charged and shown by the evidence was not a negligent order to the plaintiff to do a dangerous thing, but that the ladle was defective and the order was given him to perform a duty by a negligent method, that is throwing water upon molten metal from the defective ladle. In the case at bar there is no evidence that the method of doing the work was negligent. In Huskey v. Hein Safety Boiler Co., 181 S. W. 1041, recovery was allowed, not because the order to do the act involved danger, but because plaintiff was ordered to work without a platform, although the foreman knew that within fifteen or twenty minutes there would have been completed an adequate platform. The ground of recovery in that case was not merely the giving of an order entailing danger, but the giving of an order entailing unreasonable and unnecessary danger in requiring the work to be done in a negligent manner.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.