ROBERT GRINDSTAFF v. J. GOLDBERG & SONS STRUCTURAL STEEL COMPANY, Appellant.—40 S. W. (2d) 702.

Division One, June 24, 1931.

*Morrison, Nugent, Wylder & Berger* for appellant.

*Atwood, Wickersham, Hill & Chilcott* for respondent.

RAGLAND, J.—This case comes to the writer on reassignment. It is an action by a servant for personal injuries alleged to have resulted from the master's negligence. Plaintiff had judgment below for $8,500; defendant appealed. The principal ground on which a reversal of the judgment is asked is the alleged insufficiency of the evidence to make a prima-facie case for plaintiff on the issue of negligence, the defendant having stood mute as to that issue. General negligence only was pleaded. The evidence offered to establish it will be briefly summarized.

Appellant operated a large plant in the manufacture of structural steel for building purposes. Respondent was in its employ as a common laborer. Five other persons were employed in similar capacities. The six, all of the same rank or grade, were subject to the orders of a foreman, one Beasley, and performed from time to time such miscellaneous tasks as he directed. Speaking generally, all six did the same character of work.

In the building which housed appellant's machinery and plant there was a traveling crane which moved east and west along tracks about twenty feet above the floor. The crane, to which a hoist was attached, was operated by an electric motor. The motor was started by pulling a rope which hung down a convenient distance from the floor. The motor was stopped by ceasing to pull the rope. The apparatus as a whole was used in moving heavy pieces of steel from one place to another. There was a hook on the hoist, to which the load to be lifted and moved was fastened by means of a chain. Appellant had furnished, and they were there at hand, a number of chains of different weights and sizes, all available for use. It was the duty of the workman directed to move a piece of steel to select a suitable chain and with it fasten the load to the hoist. The moving of steel, in the manner indicated, was on occasion done by respondent or some of the other common laborers, when ordered so to do by the foreman.

With respect to the manner in which he received the injury for which he sues, respondent testified:

"Q. Now, Mr. Grindstaff, did you have anything to do with the inspection or care of that crane? A. No, sir, not a bit on earth. Q. Did you have anything to do with making of repairs on it? A. No, sir. Q. Did you have charge of any of the employees there? A. None whatever. Q. Were you familiar, or did you have any knowledge of the manner in which this crane worked, outside of what you have described to us? A. No, sir. Q. Were you familiar with the construction of this crane? A. No, sir. Q. Now, what date was it you said you were injured? A. The 22nd day of October, 1925. Q. About what time in the day was it? A. I would judge it was something like nine o'clock. Q. Now, what time had you gone to work that morning? A. Eight o'clock. Q. And you said Mr. Beasley was your foreman? A. Yes, sir. Q. Did you have any conversation with Mr. Beasley right after you went to work? A. He told me to take some men and show them a place to clean iron and paint it, and as soon as I got through, to come back to him. Q. And what did you do? A. I took them down and showed them what to do, and then came back to him. Q. How long were you down there? A. About an hour. Q. What did he say when you came back? A. He told me to move that truss that was on there; that they were coming from the riveting room with another load; and he wanted it moved over where there were two more laying there. Q. How soon did he say to move it? A. He said to move it in a hurry. Q. Did you see the truss? A. Yes sir, I saw it hanging there. Q. Had you had anything to do with attaching it up there? A. No, sir. Q. Did you know who attached it up there? A. No. Q. Did you know the manner in which it was attached up there? A. No, sir. Q. Now, what did you do when he told you that? A. I took hold of the rope, and that starts the traveler up, and when you let loose of it it stops. Q. And what direction were you going to move this truss? A. I was going to move it about eight or ten feet east. Q. Now, what was the size of this truss; how long was it? A. I would judge it was about twenty feet. Q. And how high was it? A. It was higher at one end than the other. It was about ten— eight or ten feet at one end and ran down to maybe twelve or fourteen inches. Q. What was it made of? A. Steel. Q. Do you know approximately how much it weighed? A. About 1450 or 1500 pounds. Q. Where were these controls or ropes hanging down that you operated the crane by? A. They came from a little motor up on the beam. . . . Q. All right; what did you do? A. I got hold of the rope and started it up and the truss fell over on me. Q. And at the time you took hold of the rope how far were you from the truss? A. I was probably eighteen inches or two feet. Q. What was the first you knew it was about to fall? A. I saw it drop, and started to run and it caught me, and it broke my leg in two places, and cut my back—"

Runkles, the only other witness called on the issue of negligence or no negligence, testified:

"Q. Were you in the room at the time the truss fell? A. Yes, sir. Q. How far away were you from the truss at that time? A. I would judge twenty or twenty-five feet. Q. You say your back was toward it then? A. Yes. Q. Did you investigate to see what caused it to fall? A. No, sir. Q. Didn't you look afterwards? A. I saw the chain afterwards. Q. What was the condition of the chain? A. The chain was broken, and part hanging from the traveling crane and part on the ground. Q. You looked at that right after the truss had fallen? A. Yes, sir. Q. How long had you been where you were at the time the truss fell, in this position about twenty feet away? A. Maybe fifteen or twenty minutes. Q. Who had put the chain around the truss? A. I don't know who did. Q. Did you see anybody put the chain around the truss and raise the truss there? A. No, sir. Q. Who else was present at the time the truss fell? I mean within a radius of about forty feet at the time the truss fell? A. After it fell? Q. No; right at the time it happened. A. At the time it happened I would judge there was myself and Dick Dickel and Bob Grindstaff, and Seufenbach, and I think John Seebe was there. Q. And nobody else? A. I don't remember seeing anybody else at that time. Q. Did you pick up this piece of chain and examine it? A. No, sir. Q. But at any rate the breaking of the chain was what had caused the truss to fall, was it? A. Yes, sir."

The foregoing is a complete summary of the evidence offered on the issue of negligence. It is silent as to the size, weight or tensile strength of the chain by which the truss was suspended, or its suitability or fitness in any way for the purpose for which it was being used; it tells nothing as to whether the chain originally, or in its then condition, was in any respect defective; it gives no intimation as to the identity of the person who selected the chain and used it to attach the truss to the hoist; it is a blank as to who operated the hoist to bring the truss to a swinging position or when that was done. The scene opens with a truss suspended by a chain from the hoist. The respondent then, pursuant to the foreman's order to move the truss eight or ten feet east, pulls the rope and the motor starts, the chain by which the truss is suspended breaks and the truss falls. That is all.

I. The defendant filed a motion to require the plaintiff to make the petition more definite and certain in respect to its allegations of negligence. The motion was overruled by the trial court and the defendant then answered. On the opening of the trial and upon plaintiff's first proffer of evidence, defendant objected to its reception

on the ground that the petition failed to state facts sufficient to constitute a cause of action. Appellant presses the points here. By pleading over it waived the defect, if any, struck at by its motion to make definite and certain. The objection to the introduction of any evidence served no other purpose than that of encumbering the record and consuming the time of the court. Such an objection, so far as the writer is able to discover, serves no purpose in any case. It is a procedural archaism that could well be consigned to "the limbo of forgotten things." A petition which charges negligence in general terms, without more, is good after verdict and judgment. [State ex rel. v. Trimble, 18 S. W. (2d) 4.]

II. The petition alleged: "that the falling of said steel truss and the striking of plaintiff by the same was unusual and contrary to the ordinary methods of work in said shop . . .; that said large steel truss fell . . . and struck plaintiff and was caused to fall and strike plaintiff solely because and on account of the negligence, carelessness and unskillfulness of the defendant."

The plaintiff had the burden of showing, prima-facie at least, that the defendant was negligent and that its negligence caused his injury. It was not necessary that he prove these elements of his case by direct evidence in order to discharge such burden; if they can be reasonably inferred from facts which his evidence tended to establish, that is all that is required. The facts shown by the evidence were that the plaintiff suffered physical injury and that the injury was occasioned by the breaking of a chain by which a steel truss was suspended to the hoist of a traveling crane. From the bare fact of injury no inference of negligence can be drawn. Does the occurrence which occasioned the injury give rise to any inference of negligence on the master's part?

So far as the evidence discloses, there was nothing unusual or abnormal in the action of the crane, the motor or the hoist; the occurrence was shrouded in no mystery; it consisted simply of the breaking of the chain by which the truss was suspended. Now a latent defect, not discoverable by any reasonable inspection, may have caused the chain to break—a cause not attributable to negligence on the part of any one; or the chain, on account of its size, weight or other plainly discernible quality may have been obviously unfit for the purpose for which it was used, but notwithstanding was negligently selected and used by a fellow servant—negligence for which the master is in nowise responsible. It is clear therefore that the occurrence does not so speak as to inevitably charge the defendant

with negligence. To make out a case for the application of the doctrine of *res ipsa loquitur* the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed. [Removich v. Construction Co., 264 Mo. 43, 173 S. W. 686.] While it is not necessary that they exclude every possible hypothesis except that of the defendant's negligence (Gordon v. Packing Co., 328 Mo. 123, 40 S. W. (2d) 693), it is entirely clear that if two or more inferences can be equally well drawn from them, one of which points to negligence on the part of the defendant as the cause of plaintiff's injury, and the others to causes for which the defendant was in no way responsible, proof of such facts does not make out a prima-facie case for plaintiff. [Fowler v. Elevator Co., 143 Mo. App. 422, 426, 127 S. W. 616.]

"Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the accident, but show a state of affairs where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances of the accident, and the defendant is not called upon to explain the cause of the accident, and to purge himself of the imputed or inferential negligence." [McGrath v. St. Louis Transit Co., 197 Mo. 97, 104, 94 S. W. 872.]

Plaintiff's evidence failed to make out a submissible case either with or without the aid of the *res ipsa loquitur* doctrine. Cases cited by respondent holding that the unexpected automatic action of a complicated mechanism, such as a punch press or a stamping mill, entirely out of the usual manner of its operation, affords prima-facie evidence of some want of care in its original construction or then condition, are distinguishable from the instant case on the facts, and are not in point.

III. The conclusion reached in the preceding paragraph necessitates a reversal of the judgment and the remanding of the cause, in other words, disposes of the appeal. But as the cause is to be retried some further suggestions as to the questions raised may not be amiss.

It is manifest that defendant's motion to require the petition to be made more definite and certain should have been sustained. What caused the chain to break was not peculiarly within the knowledge of the defendant; this underlying cause of the injury sued for was equally open to investigation by both plaintiff, and defendant. The difficulties under which plaintiff may have labored, or still labors, with respect to obtaining proof—his unconsciousness following the casualty, his enforced inactivity for several weeks while in a hospital, the lack of witnesses

or his inability to secure their testimony—are not inherent in the situation, but wholly extraneous; they afford no ground for putting on defendant the onus of showing generally that it was guiltless of negligence. [Removich v. Construction Co., supra; Miller v. Railroad, 186 Pa. St. 190.]

Throughout the trial the utmost effort was exerted, by plaintiff to show and by defendant to conceal, the fact, if a fact, that a liability insurance company was making the defense. It seems only necessary to say: If an insurance company is the real defendant and as such is resisting plaintiff's action and conducting a defense of its own contriving, it should be compelled to put aside its disguise and stand in the open. Both the court and the jury have a right to know who are the real parties litigant: questions relating to the admissibility of evidence, the weight to be given testimony and the credibility of witnesses are involved. [Snyder v. Wagner Elec. Mfg. Co., 284 Mo. 285, 223 S. W. 911; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89; Schuler v. St. Louis Can Co., 322 Mo. 765, 18 S. W. (2d) 42.] On the other hand, if the Steel Company is the defendant in reality as well as in name and as such is conducting its own defense, then the fact, if a fact, that it is protected from loss on account of the casualty involved by liability or indemnity insurance, is wholly irrelevant to the issues, and may be highly prejudicial if brought to the attention of the jury.

The judgment of the circuit court is reversed and the cause remanded. All concur.