Joseph E. LAWLEY, Respondent,

v.

KANSAS CITY, Missouri, Appellant.

No. KCD 26628.

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

**830**

Aaron A. Wilson, City Counselor, Joseph R. Hachey, Thomas C. Clark, Asst. City Counselors, Kansas City, for appellant.

Thomas A. Sweeny, Edward F. Aylward, Kansas City (Popham, Popham, Conway, Sweeny & Fremont, Kansas City, of counsel), for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

Plaintiff recovered judgment against appellant City in the amount of $15,000.00 for an injury to his foot when a 500 pound gate valve of a water main fell upon it. Plaintiff was a foreman of a two-man labor crew, and was working in a hole or pit when the gate valve fell as it was being lowered into the pit in a cable "sling" by a crane truck crew of the City.

The City makes four points, and ten subpoints. The most hotly contested issues are whether plaintiff properly pleaded or made a submissible case under the doctrine of res ipsa loquitur. The time-honored and often cited case of McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559 (Mo. banc 1932), sets forth the settled rule for the application of the doctrine: "In general and on principle the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." If these elements are present under the evidence, and under circumstantial evidence, the doctrine of res ipsa loquitur is applicable, Parlow v. Dan Hamm Drayage Co., 391 S.W.2d 315, 323[9–11] (Mo.1965); and absent specific proof of negligence, the jury may infer negligence. Thompson v. Kansas City Public Service Co., 232 Mo.App. 1124, 114 S.W.2d 145 (1938).

831

Plaintiff, at the time of trial, had been working as a foreman for the City for about 20 years. The injury resulting in this action occurred on May 1, 1966, and plaintiff continued to work as a foreman until a second accident injured him when a fire plug exploded in his face in August, 1970. The second accident, but not the first, was covered by the Workmen's Compensation Act since the City had not yet elected to come under the Act when plaintiff was first injured.

Plaintiff was called by the City to go to 23rd and Belleview to attend to the water main on April 30, 1966. He arrived there about 8:30 a. m., with instructions to take off the dome, or top part, of a 36-inch valve so that the two gates of the valve could be replaced. He had two men with him. Plaintiff and his men discovered on loosening the nuts that the water, which had tremendous pressure, had not been turned off, and they had to wait about 4 hours after it was turned off for the water to drain from the main. When he pulled the dome away from the bell, or lower part of the valve, plaintiff found that the gates were not in it. "They had took them out and took them away from there, so they could clean and fix them. And what they had to do to them I don't know, * * *." The dome was then taken out, hoisted to the surface from the pit and put on a form where it could be cleaned, so that when the gates arrived it could all be put back together. After the dome was cleaned, the ground was then levelled in the pit by plaintiff.

When the valve gates arrived at the site, plaintiff was in the pit, and he put the bottom valve gate in place. He had nothing to do with lowering the bottom gate into the hole, but was putting a timber in so that they could slide the valve into place when it was gotten together. At the time the gates were lowered two superintendents, Mr. Johnson and Mr. Dawson, were there. Mr. Johnson told plaintiff and his crew to work as quickly as they could, but to take their time to get the valve together

right. A crane operator got in the cab to lift the second 500 pound gate, and another man got on the back of the truck to help lift it and to bring it around where it could be lowered into just the right spot on the first valve. It was lowered to just a few inches above the part where it was to sit, and was swung around. Plaintiff told the other men to move back out of the way and he moved up to put his hands on the gate to stop it from spinning, "to get where the stem goes into the gate, and just before it got there, I went to catch it as it get there, and it made a squeak and came toward me, and I jumped about six-feet or something like that, as near as I can know, I jumped about six feet backwards, away from it, and I never got any further away from it than I were at the time when it started back, but it was going down edgeways, and when I hit the ground, this foot (indicating) up in the air, and on this foot (indicating) it fell edgeways on my foot, and I couldn't move it." Plaintiff never got a chance to touch the valve gate.

In addition to his testimony that the gate valves were missing from under the dome when he removed it, plaintiff testified: "Q. And did you participate—is it your recollection that you participated in any way in placing the cables around the top dome, or the top gate— A. No, sir, I didn't— Q. —to lift it off the truck? A. No, sir, I didn't. Q. Did you see who did it? A. No, sir, I didn't. It was that way when they—it was supposed to be that way when they left from wherever they brought them from, so I understood. Q. Oh. One of your workers around there did it, put the straps or cables around the gate then? A. I don't think so. Q. Well— A. Because— Q. —did some fellow worker put the cables on? MR. SWEENY: Chuck, if you would let him finish— A. Wherever it was cleaned. Wherever it was cleaned. Q. (By Mr. Lewis) Do you know of your own knowledge where these gates were cleaned? A. I really don't. Q. You have no knowledge? A. I don't know whether they carried them to North Town, I don't

know whether they carried them down in the West Bottoms to the Pumping Station, I don't know whether they carried them to the Water Department; I does not know. Q. Well, is it your testimony, Mr. Lawley, that there are about three different places where these valves could be cleaned? A. Yes. I guess it is. Q. And are all of these three places maintained, owned and controlled by the City? They are City shops? A. Yes. Q. And City people work on them there? A. Yes. Q. You have been around these shops, haven't you? A. Yes. Q. In your period of twenty-two years with the City, why, you have been in all three of these places? A. Yes but I don't know —I didn't even know the valve was took apart until the evening I got off from work and they asked me would I work down there the next day, and I told them 'Sure'." The City put on no evidence.

■ The City first says that plaintiff's petition failed to state a claim upon which relief could be granted because it failed to allege, and nothing in the evidence established, that the City failed to exercise ordinary care to make plaintiff's place to work reasonably safe, nor that it furnished him unsafe tools or instrumentalities to do his job, as is required in a master-servant action. Plaintiff pleaded: the water valve being suspended from the cable of a crane suddenly and unexpectedly slipped, causing his left foot to be injured; the occurrence was an unusual event and would not have occurred but for the negligence of the City or one of its employees; that plaintiff did not know what caused the cable to slip, but that the City had such information as the instrumentality was in the exclusive control of the City, its agents, servants and employees. Under the McCloskey case, supra, these are sufficient allegations to bring this case within the res ipsa loquitur doctrine. Plaintiff does not ground his case upon any specific allegations of failure to provide him with a safe place to work or to provide him with safe tools or instrumentalities, nor was he required to

adopt any such theories for recovery. The City's cited case of Coin v. John H. Talge Lounge Co., 222 Mo. 488, 121 S.W. 1 (1909), was not a res ipsa loquitur case. Point IA is overruled.

■ By Point IB, the City says that plaintiff failed to adduce any evidence to prove its negligence was the proximate cause of his accident to the exclusion of other reasonable inferences as required in a properly submissible res ipsa loquitur case. It argues: "Plaintiff's evidence totally failed to adduce any evidence which would give rise to the singular presumption that defendant's negligence caused the accident to the exclusion of other reasonable theories which were equally inferable as to the cause of this accident such as: negligence on the part of fellow employees * * *", such as the crane operator (or his helper), assumption of risk, and plaintiff's own contributory negligence in failing to check the cable and sling to see that they were in safe condition. The City relies upon Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95 (Mo. banc 1955), for the aforesaid contended proposition. Citing 35 Am.Jur., Master and Servant, § 500, p. 920, the court said to the effect that the res ipsa loquitur rule is never to be applied except where the evidence not only supports the conclusion of negligence, but also reasonably excludes every other. The Frazier case was cited in Littlefield v. Laughlin, 327 S.W.2d 863, 867 (Mo.1959), as was Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W. 2d 702 (1931), which was quoted in Frazier to the effect that the evidence must reasonably exclude every other cause than that encompassed within the res ipsa loquitur theory. The Littlefield court said, "In that respect those cases are not in accord with the recognized principles of the res ipsa loquitur doctrine, and are contrary to recent rulings of this court." The more recent ruling was in Adam Hat Stores v. Kansas City, 316 S.W.2d 594, 599, 600 (Mo. banc 1958): "[W]e hold that the possibility of the main breaking from some

cause for which the city would not be liable does not preclude the right of plaintiff to submit to the jury the issue of the break being caused by negligence of the city. When it is once determined under the res ipsa doctrine that the breaking of the main raised a reasonable inference of negligence, as we have determined under the facts in the instant case, it is not necessary that the plaintiff go further and exclude every other reasonable theory of nonliability on the part of the defendant. 'If a plaintiff in [a res ipsa case] were required to produce evidence that would exclude every reasonable theory but that of negligence of the defendant the doctrine would be annihilated.' (Citing cases.)" As ruled below, the elements of a res ipsa loquitur case are here present so as to permit the jury to infer that the city was negligent. Since under the evidence negligence exists, plaintiff's risk is that negligence, which is not an ordinary incident of his employment was the fact under the City's cited cases of Daniel v. Childress, 381 S.W.2d 539 (Mo. App.1964); and Mitchell v. Westport Hotel Operating Co., 225 Mo.App. 181, 19 S. W.2d 528 (1929), and assumption of risk is no defense. Hightower v. Edwards, 445 S.W.2d 273, 277[9, 10] (Mo. banc 1969). [This observation necessarily rules adversely to it, the City's Point ID, that plaintiff was guilty of assumption of risk as a matter of law.] There is no evidence here that plaintiff was under any duty to inspect and check the cable and sling prior to or during the time that the gate valve was lowered into the hole. The evidence shows also that he had nothing to do with the removal of the gate valve from the hole, its removal to another location, or its removal from the crane truck and its lowering into a hole. Clearly, another crew or crews did those tasks, and under the evidence plaintiff was not even allowed to interfere with those activities. [These observations necessarily rule adversely to it, the City's Point IV, that the court erred in refusing its offered Instruction No. A on plaintiff's contributory negligence in failing to ascertain that the cables around the valve gate were in proper position to permit the valve gate to be lifted without slipping out of the cables—there was simply no evidence to support that instruction.] As to negligence of fellow servants being inferred, there is no evidence that with plaintiff as foreman, his two helpers in the hole had anything to do with the lowering of the gate valve. There was an entire absence of evidence of a relation of fellow servants to plaintiff in that operation—the crane truck crew and plaintiff were not associated in common employment, with opportunity to know and observe the work of the other. See Propulonris v. Goebel Const. Co., 279 Mo. 358, 213 S.W. 792, 795[4–7] (1919); and Daniels v. Banning, 329 S.W.2d 647, 650[1, 2] (Mo.1959), for those requirements for the application of the fellow servant rule. [This observation necessarily rules adversely to it the City's Point IE that plaintiff failed to make a submissible case under the res ipsa loquitur doctrine because of negligence of a fellow servant, or in combination with his own negligence or by reason of his own contributory negligence, all, as claimed, as a matter of law.]

■ The City's Points IC and IF are here combined. They are that plaintiff failed to adduce evidence that whatever instrumentality which may have caused the accident was under the exclusive management and control of the City, or that it had superior knowledge as to the cause of the accident, to make a properly submissible or a prima facie case under the res ipsa loquitur doctrine. The contention that the City was not in exclusive management and control of the instrumentality ignores the plaintiff's testimony. From that testimony the jury could fairly find that the City had removed the gate valves prior to the time plaintiff arrived for his assigned duty of replacing them beneath the dome of the water main; the gate valves were taken by the City, or another of its crews, to one of three places for the purpose of cleaning or repairing them. Plaintiff had nothing to do with that operation, and had no knowl-

edge of how the cable and sling were placed on the gate valves. Again that operation was done by somebody else as the jury could find. The jury could further find that plaintiff had no management or control of the operation of lowering the gate valves into the hole—the crane truck crew clearly assumed to perform that task. All that had to do with the operation was his attempt to stop the gate valves from spinning, and he never did touch them prior to the time one fell upon him. These facts are stronger as to the plaintiff's lack of any control or knowledge of the instrumentality and the cause of the accident than those in Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78 (1948), which held, as does McCloskey, supra, that exclusive control does not mean physical control but the right to control. Plaintiff Cruce was actually operating a coal chute, and as he pulled on a rope to lower a pan over which the coal rolled to a bin, a cable broke and the pan fell, injuring him. Plaintiff knew nothing about the cables and was not instructed that it was his duty to make inspections. There was evidence that someone other then the men working at the chute determined when the cables needed replacing. A res ipsa loquitur case (held to be applicable to master and servant cases, provided the facts call for its application, 216 S.W.2d 80[1], was held to have been made.) See also 2 Speiser "The Negligence Case, Res Ipsa Loquitur", § 16:1, p. 35, and as to falling objects, §§ 18:1, 18:2, pp. 62, 64; Littlefield v. Laughlin, supra, where a chain broke while plaintiff and a co-employee were operating an elevator allowing it to fall. Points IC and IF are overruled.

■ Point II that the court erred in permitting plaintiff's counsel, who it is claimed withheld in opening argument any reference to damages to argue same in closing argument, is overruled. Although it is true that counsel did not mention a dollar amount of damages in opening argument (he asked for a $15,000.00 verdict in

closing argument), he definitely did mention plaintiff's injuries, his treatment, his medical care, his disability and his continuous pain for eight months or so. The City's objection did not go to the lack of mention of any *dollar* amount of damages in the opening argument, and does therefore not reach the point now presented, nor does its motion for new trial mention that matter. See Samborski v. Price, 417 S.W.2d 205 (Mo.App.1967).

The City, under its Point III, makes four attacks on Instruction No. 4, which is:

"Your verdict must be for plaintiff if you believe:

First, the cable or sling was placed around the valve gate by employees of the defendant at some location other than on the job site, and

Second, the valve gate slipped from the sling, and

Third, such slipping of the gate was the direct result of defendant's negligence, and

Fourth, as a direct result of such negligence the plaintiff sustained damage.

MAI 31.02(2) Modified."

■ It is first said by the City that there was no evidence adduced to prove that its employees placed the cable and sling on the valve gate at some location other than the job site, without resorting to guesswork and speculation. The submission, and the evidence to support it, mentioned above, goes to the issue of the City's control over the gate valves, and as noted there was evidence that they were away from the job site to one of three other places for cleaning and repair. Plaintiff had nothing to do with that operation, nor any knowledge with specific respect thereto. The inference of negligence in placing the cable and sling on the valve of course comes from the fact that if done

so properly the accident ordinarily would not have happened. It was not incumbent on plaintiff to rule out the possibility of other causes for the cable and sling to have slipped such as "normal bumping and jostling" as the gates were being transported, and as above noted, there was no evidence that there were co-employees engaged in a mutual task with plaintiff whose duties were to reposition the cables at the job site. The lowering of the gate valves was done by a crew independent of plaintiff and his two-man crew in the hole.

■ It is next said that Instruction No. 4 actually submitted specific negligence because it required the finding that the cable or sling was negligently placed around the valve gate at some location other than the job site. Suffice it to say again that the submission is merely that the City had exclusive control and superior knowledge of the facts than did plaintiff, both elements of the res ipsa loquitur doctrine. No specific causes of the accident, which would rule out the doctrine, were ·

shown by plaintiff. The submission was, under the circumstances of this case, proper.

■ Thirdly, it is said that Instruction No. 4 improperly omitted a tail, referencing plaintiff's contributory negligence, "unless you believe plaintiff is not entitled to recover by reason of instruction number _____." No contributory negligence instruction was given so as to require plaintiff to negative that affirmative defense; nor, as above held with respect to the City's Point IV, would one have been proper under the evidence.

Lastly, the City claims that plaintiff, because of being foreman at the site, had the control and right of control of the instrumentality which may have caused the accident. That matter has been fully covered above. Point III is overruled in its entirety.

The judgment is affirmed.

All concur.